COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Senior Judge Frank
Argued at Norfolk, Virginia

**PUBLISHED**

GARY D. KNIGHT, JR.

v.      Record No. 0420-18-1

HOWARD OTTRIX AND
 KAHLILAH OTTRIX

OPINION BY
JUDGE WILLIAM G. PETTY
NOVEMBER 13, 2018

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Catherine R. Daugherty for appellant.

Jennifer B. Shupert; Kerriel Bailey, Guardian *ad litem* for the minor
child (Shupert Chaing; K. Bailey Law, PC, on brief), for appellee.

Gary D. Knight, Jr. appeals an order by the circuit court finding, upon *de novo* review of

a decision by the Norfolk Juvenile and Domestic Relations District Court (JDR court), that

Knight had withheld consent to the adoption of his child contrary to the best interests of the

child.  Because we conclude that the circuit court had no jurisdiction to enter the order appealed

from, we vacate the order.

BACKGROUND[1]

A child was born to S.M. (mother) and Knight in November 2005.  A hospital social

worker contacted the Norfolk Division of Social Services (department) because of concerns

regarding mother's interactions with child.  A few days after her birth, the child was removed

from mother's custody by the department because mother had exposed the child to cocaine *in*

---

[1] The facts recited here are taken primarily from orders issued by the Norfolk Juvenile
and Domestic Relations District Court dated December 5, 2005, and December 9, 2005, and by
the Norfolk Circuit Court dated June 13, 2007, and February 24, 2015.

*utero*. Immediately upon her discharge from the hospital, the child was placed with Howard and Kahliliah Ottrix (custodians) who stated they were willing to care for the child until the mother was stable and could care for her child.[2] After an emergency removal order, the JDR court issued a preliminary removal order based on its finding of abuse and neglect. Two months later, mother and Knight appeared, each with counsel, for a hearing regarding the custody of the child. At that time, the JDR court issued a dispositional order on behalf of the department, which specified visitation rights for the parents and services they needed to complete if they wanted to regain custody of their child. The JDR court reviewed and affirmed the custody arrangement and parental requirements during December 2006, when the child was about one year old. In December 2007, the circuit court granted sole legal and physical custody of the child to the custodians. Although Knight had attended two parenting classes and participated in a few supervised visits with his child, the circuit court found he had failed to complete the remedial steps ordered by the court. This was due in part to Knight's arrest and subsequent conviction for grand larceny. The court ordered that neither mother nor Knight was to have any visitation.

After being released from prison in 2015, Knight sought visitation. In an order denying visitation, the circuit court noted it was

> shocked that [the department] would close a case on an infant who was certainly adoptable without insuring that she had a permanent placement in her formative years. It [was] only happenstance that [child] has lived with the [custodians] in what appears to be a wholesome environment without the intervention of her biological parents. Indeed, had [the department] followed through with permanent placement, i.e., adoption planning, [child] would not now be suffering the inevitable stress she bears incident to this litigation.

---

[2] The record indicates that mother may have suggested to the department that the custodians would be willing to accept custody of the child.

In 2017, the custodians filed a petition asking the JDR court to accept mother's and Knight's consent to adoption of the child by the custodians. The custodians asked that, in the alternative, the JDR court find that consent was being withheld contrary to the interest of the child and was therefore not required for the adoption. After a hearing at which mother and Knight were represented by counsel, both parents refused consent to the adoption. The JDR court then found that mother and Knight each were withholding consent to the adoption contrary to the child's best interests.[3]

Knight appealed the JDR court's ruling to the circuit court. By order dated February 15, 2018, and after a *de novo* review, the circuit court agreed with the JDR court's finding that Knight was withholding consent contrary to the best interests of the child. Knight now appeals to this Court.

ANALYSIS

"Subject matter jurisdiction is a threshold question. It is a question of law we review *de novo*."[4] Parrish v. Fannie Mae, 292 Va. 44, 49, 787 S.E.2d 116, 120 (2016) (citation omitted).

_____

[3] Father was again incarcerated at the time. He was additionally represented by a guardian *ad litem*. Mother did not appeal the JDR court's finding.

[4] The issue of jurisdiction was not presented to nor ruled upon by the trial court. Additionally, neither party addressed in their brief the jurisdiction of the JDR court to enter the order or the circuit court to hear the case on appeal. This Court ordered supplemental briefing by the parties on this issue, and the parties' briefs were reviewed by this Court prior to oral argument. We also asked the parties to address whether, in view of subsequent orders entered by the circuit court in this case, the circuit court's February 15, 2018 order was a final order. We agree with the parties that the circuit court order was a final order because it "dispose[d] of the whole subject, [ruled on] all the relief contemplated, provide[d] with reasonable completeness for giving effect to the [ruling], and [left] nothing to be done in the cause save to superintend ministerially the execution of the order." Mina v. Mina, 45 Va. App. 215, 220, 609 S.E.2d 622, 625 (2005) (quoting James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002)). Moreover, once this Court "acquire[d] jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken . . . cease[d]." McCoy v. McCoy, 55 Va. App. 524, 528, 687 S.E.2d 82, 84 (2010) (quoting Greene v. Greene, 223 Va. 210, 212, 288 S.E.2d 447, 448 (1982)). Thus, the subsequent orders are of no

"In deciding questions of subject matter jurisdiction, we are not limited to the arguments raised by the parties." Id. (quoting Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990)). It is well-established that courts may raise questions of subject matter jurisdiction *sua sponte* and that parties can neither waive nor confer subject matter jurisdiction. Id.

The Norfolk Juvenile and Domestic Relations District Court is a court not of record. Code § 16.1-69.5(a). "As courts not of record, [juvenile and domestic relations] district courts are creations of the General Assembly." Parrish, 292 Va. at 49, 787 S.E.2d at 120 (citing Va. Const. art. VI, § 8; Code § 16.1-69.7). "They are courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute." Id. Moreover, "[i]t is well-settled that when exercising its appellate jurisdiction in a *de novo* appeal, the circuit court's subject matter jurisdiction is derivative of the court not of record from which that appeal is taken." Id. "[T]hat is, the jurisdiction of the appellate court in such matters is the same as that of the court in which the action was originally instituted." Fairfax Cty. Dep't of Family Servs. v. D.N., 29 Va. App. 400, 405, 512 S.E.2d 830, 832 (1999) (quoting Addison v. Salyer, 185 Va. 644, 651, 40 S.E.2d 260, 264 (1946)). "Therefore, when exercising its *de novo* appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the [JDR] district court had in that court's original proceeding. Thus, the scope of the [JDR] district court's subject matter jurisdiction is the dispositive issue here." Parrish, 292 Va. at 49, 787 S.E.2d at 120.

The General Assembly has created a process whereby a parent may place his or her child with adoptive parents. This process for parental placement adoption is codified in Code

---

moment in considering the finality of the original order. Accordingly, the circuit court's February 15, 2018 order was a final order, and as such was appealable to this Court. Code § 17.1-405.

§§ 63.2-1230 through 63.2-1240. Parental placement adoptions may be initiated in a JDR court provided that at least one parent consents to the adoption.[5] In such an adoption, the "birth parent . . . may place his child for adoption directly with the adoptive parents of his choice." Code § 63.2-1230. The proceedings, including consent executed before a JDR court, are expedited so as to be heard "within ten days of filing of the petition or as soon thereafter as practicable so as to provide the earliest possible disposition." Code § 63.2-1230. In the event that one birth parent gives consent but the other parent refuses, the court may consider whether the refusing parent's consent is being withheld contrary to the best interest of the child. Code § 63.2-1233(2). "[I]f consent cannot be obtained from *at least one birth parent*, the juvenile and domestic relations district court shall deny the petition." Code § 63.2-1233(3) (emphasis added). The adoption must then be "instituted by petition to a circuit court" of proper venue. Code § 63.2-1201.

Clearly, the case before us was not a parental placement adoption. Here, mother did not place the child directly with prospective adoptive parents. See Code § 63.2-1230. Rather, the department placed the child with the custodians and the JDR court issued a removal order based on a finding of abuse or neglect of the child. Although the custodians agreed to keep the child until mother was stable and able to care for the child, nothing in the record indicates that either the parents or the custodians viewed the placement as a prelude to adoption. Quite the contrary, the parents, represented by counsel, attended dispositional hearings regarding custody of the child. The parents took advantage of court-ordered services provided by the department in an effort to regain custody. After parental visitation was terminated by court order in 2007, no party, including the department, pursued adoption as a permanency plan for the child until the custodians filed their petition in 2017. In connection with that petition, both parents appeared

---

[5] The code section provides for exceptions not applicable to this case.

before the JDR court to expressly *deny* their consent to adoption. When the JDR court determined that neither parent consented to the adoption, it was required to deny the custodians' petition. Code § 63.2-1233(3).

Because this was not a case of parental placement for adoption, and because neither parent consented to the adoption, the JDR court did not have subject matter jurisdiction to address whether the parent's consent was being withheld contrary to the best interests of the child.

As we noted above, this matter came to the circuit court as a *de novo* appeal of a JDR court decision. As a result, the circuit court's jurisdiction was derivative of and thus dependent upon the jurisdiction of the JDR court. The JDR court lacked subject matter jurisdiction to consider consent in a non-parental placement adoption; accordingly, the circuit court lacked derivative subject matter jurisdiction to review on appeal the JDR court's ruling. Parrish, 292 Va. at 49, 787 S.E.2d at 120. "[W]hen exercising its *de novo* appellate jurisdiction, the circuit court ha[d] no more subject matter jurisdiction than the [JDR] district court had in that court's original proceeding." Id.[6]

As the circuit court noted in 2015, through "happenstance" the child was placed at birth with these custodians, who have provided the child with "what appears to be a wholesome environment" and who are willing to make the placement permanent through adoption. The JDR court, however, had no subject matter jurisdiction over parental consent to this adoption because it was not a parental placement adoption. The circuit court therefore had no derivative subject matter jurisdiction to hear an appeal of the JDR court's ruling.

_____

[6] We acknowledge that had this case originated in the circuit court as a petition for adoption pursuant to Code § 63.2-1201 the circuit court would have had jurisdiction and authority to determine whether a birth parent's consent was being withheld contrary to the best interests of the child. Code § 63.2-1203(A).

CONCLUSION

The JDR court had no jurisdiction to hear a petition related to consent for adoption that was not a parental placement adoption. The circuit court had "no more subject matter jurisdiction than the [JDR] district court had in that court's original proceeding." Parrish, 292 Va. at 49, 787 S.E.2d at 120. That is to say, it had no subject matter jurisdiction at all to hear the appeal. Accordingly, we vacate the circuit court's February 15, 2018 order finding that Knight's consent to the adoption was being withheld contrary to the best interests of the child.

Vacated.