COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, O'Brien and Senior Judge Frank
Argued by teleconference

PUBLISHED

JOHN BERRY

                                                            OPINION BY
v.        Record No. 0204-20-4                    JUDGE WILLIAM G. PETTY
                                                            JULY 14, 2020

MARY BARNES, TRICIA ANN SCANLON AND
 DONALD EDWARD SCANLON

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Colleen M. Quinn (Mary G. McLaurin; Locke & Quinn, PLC on
briefs), for appellant.

Maggy R. Vaughn; Elizabeth S. Vaughan (Graham Law Firm,
PLLC, on brief), for appellees.

(Isabel Kaldenbach; Isabel Kaldenbach, PLLC, on brief), Guardian
*ad litem* for minor child.


John Berry, the putative father of a newborn child, appeals the circuit court's granting of

a plea in bar on the basis that he has no standing to appeal a legal decision made by the juvenile

and domestic relations district court regarding the child. Berry argues that he timely registered

with the Virginia Birth Father Registry and is thereby entitled to notice and participation in

adoption proceedings regarding the child. We agree and reverse.

## I. BACKGROUND[1]

When Mary Barnes discovered she was six months' pregnant, she informed John Berry. Both Barnes and Berry have testified under oath that Berry is the biological father of the child. Berry accompanied Barnes to two adoption agencies to get information about placing the child for adoption. At both agencies, Berry resisted the option of adoption and stated he wished to parent or co-parent the child. One agency helped Berry create a parenting plan.

The other agency, Catholic Charities, connected Barnes with a prospective adoptive couple and worked to facilitate the adoption. On July 8, 2019, Catholic Charities sent a certified letter to Berry informing him of the Virginia Birth Father Registry (Registry) as required by Code § 63.2-1250(F). Berry and Barnes met with Catholic Charities on July 23, 2019, and employee Katherine McManus testified she "serve[d] as a support person [to Berry] during the meeting." McManus also testified that although a search of the Registry indicated Berry had not yet registered, she did not ask him if he had received the letter and did not mention the Registry to him. McManus then spoke with Berry by phone and told him that Catholic Charities would no longer divulge to him any information regarding Barnes's adoption steps because she was the "identified client" and he did not agree with her decision to pursue adoption.

On August 26, 2019 the adoptive parents filed a petition with the juvenile and domestic relations district court (the JDR court) requesting that the court accept Barnes's "consent pursuant to Code § 63.2-1233, . . . terminate the birth father's parental rights, . . . and transfer

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are discussed in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

custody of [the] child pursuant to applicable law." On that same day, Berry received notice that he was registered with the Registry; he additionally filed a motion for genetic testing. Barnes's child was born August 28, 2019. On September 9, 2019, the JDR court held a hearing to consider the adoptive parents' petition. Berry attended the hearing with counsel.[2] Based on its interpretation of Code § 63.2-1205, the JDR court ruled that although Berry had registered with the Registry within ten days of the child's birth, he had not timely registered. The JDR court ruled Berry had no standing to withhold his consent to the adoption. The JDR court excused Berry from the courtroom and proceeded to accept Barnes's consent to the adoption. The JDR court issued the order granting the petition whereby Barnes's consent to adoption was "accepted and approved, and find[ing] that should she fail to revoke her consent within seven (7) days, that her parental rights will thereby terminate." At the same time, the JDR court issued an "Order Terminating [Berry's] Parental Rights" and denying Berry's motion for genetic testing after finding that Berry was the birth father but he had failed to register with the Registry prior to July 24, 2019, which was more than ten days after the Catholic Charities letter was sent.

Two days later, on September 11, 2019, Berry appealed to the Circuit Court of Arlington County the orders granting the petition and terminating his rights on the basis he had not timely registered with the Registry. In response, Barnes revoked her consent to the adoption. The JDR court accepted the revocation on September 16, 2019, pursuant to Code § 63.2-1234(1). As set forth by Code § 63.2-1234(1)(b), it was "order[ed] that [Barnes's] consent given for the purpose

---

[2] The appellees' brief notes that Berry was told the hearing would be on September 23, 2019, but the date was moved up to September 9. Berry was not notified of the new date. The brief states that "[w]hile it is unclear how Mr. Berry obtained notice of the September 9, 2019 hearing, it is clear that he had actual notice thereof, as evidenced by the fact that he was present and represented by counsel."

of such placement [was] void," but the JDR court did not "determine custody of the child" as set forth by that statute.[3]

A hearing was scheduled in the circuit court on Berry's appeal. Prior to the hearing, the adoptive parents and Barnes filed a plea in bar arguing the appeal should be dismissed for lack of standing. The circuit court heard testimony and accepted evidence at a November 2019 hearing. It then issued an order ruling that Berry "lack[ed] standing to bring the instant appeal under Virginia Code Section 63.2-1249 et. seq. [the Virginia Birth Father Registry Act]" and dismissed the appeal. Berry now appeals to this Court.

## II. ANALYSIS

The primary issue on appeal is the circuit court's interpretation of Code § 63.2-1250 in the context of the parental placement adoption framework. "Adoption in Virginia is solely a creature of statute." Sozio v. Thorpe, 22 Va. App. 271, 274 (1996) (quoting NPA v. WBA, 8 Va. App. 246, 250 (1989)). Statutory interpretation is a question of law which we review *de novo*. Harvey v. Flockhart, 65 Va. App. 131, 143 (2015).

> Although the "adoption statutes should be liberally construed to carry out the beneficent purposes of . . . adoption," McFadden v. McNorton, 193 Va. 455, 461 (1952), the principle is well established that "[c]ourts must construe statutes according to the language used by the legislature." Anderson v. Commonwealth, 182 Va. 560, 565 (1944). Where the statutory language is clear and plain, we cannot look for ambiguities under the guise of applying liberal construction. Id.

Sozio, 22 Va. App. at 274 (alterations in original); see Harvey, 65 Va. App. at 143. "The one canon of construction that precedes all others is that '[w]e presume that the legislature says what

---

[3] After Barnes revoked consent, Berry filed a motion with the JDR court to reconsider its ruling that his registration with the Registry within ten days of the child's birth was not timely and asking the JDR court to grant him custody of the child or determine custody between birth parents as contemplated by Code § 63.2-1234(1)(b). It appears from the record that Berry's motion to reconsider was transferred to the circuit court and combined with the appeal.

it means and means what it says.'" Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc., 291 Va. 269, 277 (2016) (quoting In re: Woodley, 290 Va. 482, 491 (2015)).

A. Parental Placement Adoption

Virginia allows a parent to place his or her child for adoption using the statutory framework established for that purpose. "This process for parental placement adoption is codified in Code §§ 63.2-1230 through 63.2-1240." Knight v. Ottrix, 69 Va. App. 519, 525 (2018). Both the Supreme Court of Virginia and the United States Supreme Court have "explicitly recognized that the relationship between a parent and child is constitutionally protected by the Due Process Clause of the Fourteenth Amendment." Copeland v. Todd, 282 Va. 183, 198 (2011) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000))). "Therefore, [even parental placement] adoption cases invoke significant substantive and procedural safeguards to protect the biological parent's due process rights." Id.

Under Virginia's adoption statutes, a "child may be placed for adoption by . . . [t]he child's parent or legal guardian if the placement is a parental placement[.]" Code § 63.2-1200. Under the framework, the birth parent "may place his [or her] child for adoption directly with the adoptive parents of his [or her] choice." Knight, 69 Va. App. at 525 (quoting Code § 63.2-1230). The process for adoption "may be initiated in a JDR court provided that at least one parent consents to adoption." Id. Although adoption of a child can "be instituted only by petition to a circuit court," Code § 63.2-1201, the parental placement framework assigns to the JDR courts some of the preliminary steps. For example, Code § 63.2-1233 provides, "Consent to the proposed adoption shall be executed upon compliance with the provisions of this chapter before a [JDR] court . . . ." However, prior to accepting consent of the birth parent, the court must make

certain factual findings pursuant to Code § 63.2-1232, which requires counseling of the birth parents regarding options to adoption and the legal effects of adoption, exchange of information, a home study of adoptive parents, and disclosure of financial agreements and fees related to the adoption. "When the [JDR] court is satisfied that all requirements of Code § 63.2-1232 have been met with respect to at least one birth parent and the adoptive child is at least in the third calendar day of life," the JDR court approves consent to the proposed adoption in compliance with the provisions of Code § 63.2-1202. Code § 63.2-1233.

Once consent is executed before the JDR court, it may be revoked "[b]y either consenting birth parent for any reason for up to seven days from its execution" unless that right is waived, in which case the child must be at least ten days old at the time consent is given. Code § 63.2-1234. When a valid revocation is filed, "the [JDR] court shall order that any consent given for the purposes of such placement is void and, if necessary, the [JDR] court shall determine custody of the child as between the birth parents." Code § 63.2-1234(1)(b).

B. A Birth Father's Rights in a Parental Placement Adoption

The statutory framework controls when the consent of a birth father is required. Where a birth mother places the child for adoption, consent to the adoption must also be executed "by any man who is an acknowledged father under § 20-49.1, is an adjudicated father under § 20-49.8, is a presumed father . . . , or has registered with the Virginia Birth Father Registry . . . ." Code 63.2-1202(C) (capitalization and numbering omitted).[4] Code § 63.2-1233 lists circumstances in which the birth father's consent to adoption is *not* required. The relevant portion of that section states, "The consent of a birth father who is not married to the mother of the child at the time of

---

[4] Because Berry did not assign error to either the circuit court's finding he was not an acknowledged father under Code § 20-49.1 or its finding he had not "commence[d] a proceeding to adjudicate his paternity" pursuant to Code § 63.2-1250(D)(2) by filing a motion for genetic testing, we do not address either of those issues here.

the child's conception or birth shall not be required if the putative father named by the birth mother . . . did not register with the Virginia Birth Father Registry pursuant to [Code § 63.2-1250]."

Code § 63.2-1250 establishes the framework for preserving a putative birth father's rights through registering with the Virginia Birth Father Registry. That code section explains that "[a]ny man who has engaged in sexual intercourse with a woman is deemed to be on legal notice that a child may be conceived and that the man is entitled to all legal rights and obligations resulting therefrom." Code § 63.2-1250(A). "A man who desires to be notified of . . . a proceeding for adoption or a proceeding for termination of parental rights regarding a child that he may have fathered [must] register with [the Registry]." Code § 63.2-1250(B). Unless a man is "acknowledged to be, presumed to be, or adjudicated the father" of the child, "[f]ailure to timely register with the . . . Registry shall waive all rights of [the] man . . . to withhold consent to an adoption proceeding." Code § 63.2-1250(C). Conversely, timely registration preserves a birth father's right to participate in any legal proceeding affecting his parental rights, including adoption proceedings. See Code § 63.2-1250(A). A man timely registers when the registration "is received by the Department [of Social Services] within (i) 10 days of the child's birth or (ii) the time specified in Subsection C or F."[5] Code § 63.2-1250(E).

_____

[5] Subsection C deals with misrepresentation by the birth mother and is not relevant to the case before us. Subsection F provides,

> In the event that the identity and whereabouts of the birth father are reasonably ascertainable, the child-placing agency or adoptive parents shall give written notice to the birth father of the existence of an adoption plan and the availability of registration with the Virginia Birth Father Registry. Such written notice shall be provided by personal service or by certified mailing to the birth father's last known address. Registration is timely if the signed registration form is received by the Department within 10 days of

## C. Berry's Standing

The plea in bar filed by Barnes and the adoptive parents argued to the circuit court that Berry had no standing to pursue legal rights regarding the child. The circuit court erred in dismissing Berry's appeal for two reasons.

### 1. Berry Timely Registered

Code § 63.2-1250(E) provides, "Registration is timely if it is received by the Department [of Social Services] within (i) 10 days of the child's birth *or* (ii) the time specified in subsection . . . F." (Emphasis added). Thus, the code section provides two distinct circumstances under which registration with the Virginia Birth Father Registry is timely. Both parties agree that Berry filed within ten days of the child's birth, which was alternative (i), but did not file within the time specified in subsection F, which was alternative (ii).[6] The circuit court held that once the time period began to run under alternative (ii), Berry could not timely register using alternative (i). We disagree.

In drafting Code § 63.2-1250(E), the legislature separated the alternatives for timely registration with both the numerals (i) and (ii) and the disjunctive word "or." This Court has previously explained that phrases separated by a disjunctive are independent alternative choices. See Williams v. Commonwealth, 61 Va. App. 1, 8 (2012) ("The use of the disjunctive word 'or,'

---

> personal service of the written notice or within 13 days of the certified mailing date of the written notice. The personal service or certified mailing may be completed either prior to or after the birth of the child.

Code 63.2-1250(F).

[6] Berry concedes he did not register within the time specified in Code § 63.2-1250(F) after Catholic Charities mailed a letter to him on July 8, 2019. He assigns error to the finding that the letter constituted "adequate notice of the adoption proceedings." Because we are reversing based on his assignments of error regarding standing and timely registration, we need not address this assignment of error.

rather than the conjunctive 'and,' signifies the availability of alternative choices." (quoting Rose v. Commonwealth, 53 Va. App. 505, 514 (2009))); Shreve v. Commonwealth, 44 Va. App. 541, 548 (2004) ("The disjunctive serves to connect the two parts of the sentence but also to keep them separate and independent."); Smoot v. Commonwealth, 37 Va. App. 495, 501 (2002) ("Generally, phrases separated by a comma and the disjunctive 'or' are independent."). Thus, under Code § 63.2-1250(E), a man who meets either alternative (i) or (ii) has timely registered.

Nevertheless, the circuit court adopted the appellees' argument that if a birth father receives notice pursuant to subsection F prior to the child's birth then he no longer has the option of registering within ten days of the birth. In essence, the court interpreted the statute to say a registration is timely if it is completed by *the earlier of* alternative (i) or (ii). This was error. We presume that in drafting this provision, "the legislature [said] what it mean[t] and mean[t] what it [said]" in providing two separate, independent alternatives for timely filing. See Tvardek, 291 Va. at 277. If the General Assembly had intended to add the phrase "the earlier of," then it certainly knew how to do so. For example, under the heading of "Administrative establishment of paternity," the General Assembly provided for a father to rescind his acknowledgment of paternity "*within the earlier of* (i) sixty days from the date of signing or (ii) the date of entry of an order [related to the child]." Code § 63.2-1913 (emphasis added). In contrast, the General Assembly did not include any phrase to modify the two alternatives by which a man may timely register with the Virginia Birth Father Registry. "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the

statute or alter its plain meaning." Jackson v. Fid. & Deposit Co. of Md., 269 Va. 303, 313 (2005). And we will not do so here.[7]

It is uncontested that Berry met the first alternative option. Registration is timely if it is received by the Department within ten days of the child's birth. Code § 63.2-1250(E)(i). The child was born on August 28, 2019. Berry had until September 7, 2019, to timely register. Berry sent to the Department of Social Services the required form dated August 21, 2019, and received on August 26, 2019, a return letter from the Department notifying Berry that his "name has been entered into the Virginia Birth Father Registry." The letter further stated he was "not required to do anything." Berry was thereby timely registered before the consent hearing held on September 9, 2019.

## 2. Berry Had Standing as the Putative Birth Father

As Code § 63.2-1250(A) makes clear, a "man is entitled to all legal rights and obligations resulting" from conception of a child. Even where a man fails to timely register with the Virginia Birth Father Registry and thereby "waive[s] all rights . . . to withhold consent to an adoption proceeding," nothing in that statute "terminates" a birth father's other rights. In the context of a parental placement adoption, a birth father does not lose his parental rights until a circuit court so rules in entering a final adoption order. See Code § 63.2-1215 ("[By entry of the

---

[7] The appellees suggest that applying the plain meaning of the words would impede the timely flow of an adoption by always allowing ten days after the child's birth for the father to register. However, the ten days provided by the General Assembly for a birth father to register with the Registry matches the General Assembly's requirement that a birth parent's consent is revocable until at least the child's tenth day of life. See Code § 63.2-1234(1) (requiring the child be more than ten days old before revocation of consent is waived); see also Code § 63.2-1233(7) ("Once the child is 10 days old, any executed denial of paternity is final and constitutes a waiver of all rights with respect to the adoption of the child and cannot be withdrawn."); Code § 63.2-1202 (same).

- 10 -

final order of adoption, the birth parents are] divested of all legal rights and obligations in respect to the child including the right to petition any court for visitation with the child.").

Here, the JDR court (erroneously) found Berry had waived his right to withhold consent to the adoption pursuant to Code § 63.2-1250. Once Barnes revoked her consent, the JDR court no longer had the consent of at least one birth parent as necessary for a parental placement adoption; it was required to deny the petition. See Code § 63.2-1233(4) ("[I]f consent cannot be obtained from at least one birth parent, the [JDR] court shall deny the petition . . . ."). At that point, Berry's withholding of consent was no longer relevant because the Code required the petition to be denied.[8] Berry continued to be entitled to all the "legal rights and obligations" afforded him as the birth father of the child.[9] See Code § 63.2-1250(A).

---

[8] We also note that nothing in Code § 63.2-1233 gives the JDR court authority to terminate either parent's parental rights. The authority vested in the JDR court by this statute is to accept consent for adoption for a parental placement adoption. Where only one parent consents, the statute vests in the JDR court the authority to determine whether a non-consenting parent is withholding consent contrary to the best interests of the child. "[I]f consent cannot be obtained from *at least one birth parent*, the juvenile and domestic relations district court shall deny the petition." Knight, 69 Va. App. at 525 (quoting Code § 63.2-1233(3)). "The adoption must then be 'instituted by petition to a circuit court' of proper venue." Id. (quoting Code § 63.2-1201). As noted above, the termination of parental rights in an adoption proceeding can only be done by a circuit court through entry of an order of adoption. See Code § 63.2-1215.

[9] Although the JDR court denied Berry's motion for genetic testing, both Berry and Barnes testified under oath that Berry was the father of the child. We find no evidence in the record to the contrary.

- 11 -

III. CONCLUSION

In providing for parental placement adoptions, the legislature created a framework to balance the rights, interests, and expectations of birth parents, adoptive parents, adopted children, and others. "[I]t is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests, and to devise standards for implementation." Marblex Design Int'l, Inc. v. Stevens, 54 Va. App. 299, 309 (2009) (quoting Wood v. Bd. of Supervisors of Halifax Cty., 236 Va. 104, 115 (1988)). "Once the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in the statute.'" Akers v. Fauquier Cty. Dep't of Soc. Servs., 44 Va. App. 247, 260-61 (2004) (alteration in original) (quoting Dionne v. Se. Foam Converting & Packaging, 240 Va. 297, 304 (1990)).

Here, the legislature has provided in Code § 63.2-1250(E) that a man may timely register with the Virginia Birth Father Registry within ten days of a child's birth regardless of whether he has been notified previously of the Registry pursuant to Code § 63.2-1250(F). Berry timely registered. He was, therefore, entitled to the "legal rights and obligations" afforded him as the putative birth father of the child. Code § 63.2-1250(A). Accordingly, we reverse the circuit court's decision denying Berry standing and remand this case to the circuit court for a *de novo* hearing on the merits of Berry's appeal, including consideration of custody if appropriate. See Code § 63.2-1233(3); § 63.2-1234(1)(b).[10]

Reversed and remanded.

---

[10] Berry filed a motion with this Court for expedited review. We note that the last brief in the case was filed on April 28, 2020, and the case was assigned to the next open panel. We therefore deny the motion as moot.