COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

SAMANTHA COLLEEN COWARD

v.     Record No. 0062-21-3

TINA LOUISE JOSEPH AND
 MICHAEL A. JOSEPH

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 3, 2021

FROM THE CIRCUIT COURT OF WISE COUNTY
Ronald K. Elkins, Judge

(Jewell Morgan, on brief), for appellant.  Appellant submitting on
brief.

(Jeremy B. O'Quinn; W. Ethan Stewart, Guardian *ad litem* for the
minor child; The O'Quinn Law Office, PLLC; Stewart Law Office,
P.C., on brief), for appellees.  Appellees and Guardian *ad litem*
submitting on brief.


Samantha Colleen Coward appeals the circuit court's final order of adoption.  Coward

argues that the circuit court "erred in taking jurisdiction and proceeding with adoption and

terminating" her parental rights because "there had never been a removal of legal custody of the

child from [her] and no termination of [her] parental rights . . . by the juvenile and domestic

relations district court."  Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err.  Accordingly, we affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND

"When reviewing a circuit court's decision on appeal, we view the evidence in the light most favorable to the party who prevailed below . . . and grant them the benefit of any reasonable inferences." Lively v. Smith, 72 Va. App. 429, 432 (2020).

Coward is the biological mother to the minor child who is the subject of this appeal.[1] Tina Louise Joseph and Michael A. Joseph were Coward's foster parents "on and off" for seven years while she was in foster care, and they maintained a "very close" relationship with her. After the child was born in 2015, Coward "frequently" left the child in the care of the Josephs.

In 2016, the Wise County Department of Social Services (the Department) first became involved with Coward and the child. In early 2017, Coward was using drugs, and in February 2017, she was arrested for driving under the influence and possession of drug paraphernalia. During that time period, Coward allowed the Josephs to care for the child for approximately two weeks. After the Department discovered that Coward had custody of the child again, the Department entered into a safety plan with Coward, who had started a Suboxone program.

By mid-March 2017, Coward brought the child to the Josephs to prevent the child from being placed in foster care. On March 22, 2017, Coward, the Department, and the Josephs jointly filed a "Petition for Entry of an Agreed Order of Custody." The petition indicated that all parties agreed that it was in the child's best interests to be removed from Coward's physical custody. On the same day, the Wise County Juvenile and Domestic Relations District Court (the JDR court) issued a temporary order, which became a final order in September 2017, granting legal custody of

---

[1] Coward has a younger child who is not the subject of this appeal; the younger child was not in Coward's physical custody at the time of the circuit court hearing.

the child to Coward and the Josephs.[2]  The JDR court granted primary physical custody of the child to the Josephs and further ordered that Coward would have supervised visitation.

Coward admittedly used drugs in 2017 and 2018 and "was no good to anybody." Nevertheless, Coward "maintained pretty decent contact" with the Josephs and visited with the child throughout 2017.  Then, Coward's visits decreased, and she did not see the child at all between May 2018 and April 2019.  Between 2017 and 2019, Coward was arrested for numerous criminal offenses, including possession of drug paraphernalia, possession of a Schedule I or II controlled substance, shoplifting, and driving offenses.

In November 2019, the Josephs and the child visited Coward in West Virginia, where she was living in a halfway house.  The Josephs spoke with Coward about their desire to adopt the child, but Coward would not consent to the adoption.  Coward did not see the child after that November 2019 visit, and her last telephone conversation with the child occurred on January 1, 2020.  Shortly thereafter, Coward relapsed.

On March 8, 2020, the Josephs petitioned the circuit court to adopt the child.  The Josephs argued that Coward's consent to the adoption was not necessary under Code § 63.2-1202(H) because she had not visited with the child in the six months immediately preceding the filing of the petition, or in the alternative, that under Code §§ 63.2-1203 and -1205, Coward was withholding her consent contrary to the best interests of the child.

On November 20, 2020, the parties appeared before the circuit court.[3]  At the beginning of the hearing, Coward made a preliminary motion challenging the circuit court's jurisdiction to hear

---

[2] The JDR court held that "[f]ather can not [sic] be found for service."

[3] The child's biological father was not present at the circuit court hearing.  The Josephs had not had contact with him since before the entry of the 2017 custody order.  The circuit court found that the biological father was properly served with notice of the hearing and that his consent to adoption was not required under Code § 63.2-1202(H).

the matter. Coward emphasized that the JDR court previously had awarded her joint legal custody with the Josephs. She stated that "there has been nothing in Juvenile Court to terminate [her] rights . . . and to sever that joint legal custody." Coward argued that "the case should have started in the Juvenile Court." The circuit court disagreed and denied Coward's motion.

The Josephs testified that they were financially capable of meeting the child's needs and had been doing so without any child support or other financial assistance. They also testified that they were physically able and willing to care for the child. Tina Joseph testified that she would have allowed supervised visits if Coward had tried to see the child "at any point." Coward admitted that the Josephs had not kept her from seeing the child.

Neither Coward nor the Josephs had filed any motions to amend the custody and visitation order. Coward explained that she had not moved to modify the custody or visitation order because of her criminal and substance abuse issues.

Coward admitted that she had "a lot of problems" and was not in a position to take care of the child at the time of the circuit court hearing. She testified that after being served with the petition for adoption, she decided to get sober, and on June 25, 2020, she entered an inpatient drug rehabilitation program, where she was residing at the time of the circuit court hearing. Coward produced evidence of negative drug tests and completion of parenting, domestic violence, and anger management classes. She also produced evidence that she had attempted to mail letters and cards to the child in the summer of 2020.

Coward acknowledged that she had "made mistakes" and had "addiction problems." She did not "want to rip" the child from the Josephs because "[i]t would mess [the child] up." Coward, though, hoped that she and the child could resume visitations and build their relationship until she was able to care for the child. Coward objected to the Josephs adopting the child because Coward wanted "a chance to prove that [she] can do this."

The circuit court found that Coward had attempted contact with the child within the last six months, so the petition for adoption under Code § 63.2-1202(H) was denied. The circuit court further found that Coward was withholding her consent to the adoption contrary to the best interests of the child. The circuit court commended Coward for her efforts since March 2020. The circuit court then reviewed the factors under Code § 63.2-1205. The circuit court found that Coward's efforts to "maintain physical custody have not been very good" because the child had not been in Coward's custody for three years and eight months. In addition, although she was willing to assume custody of the child, she was not in a position to do so at the time of the circuit court hearing. The circuit court accepted Coward's admission that the Josephs had not thwarted her efforts "to assert [her] parental rights in any way." The circuit court found that a change in physical custody would be "devastating" for the child. The circuit court granted the petition for adoption and terminated Coward's parental rights. On December 21, 2020, the circuit court entered the final order of adoption. This appeal followed.

ANALYSIS

Coward argues that the circuit court "erred in taking jurisdiction and proceeding with adoption and terminating" her parental rights because "there had never been a removal of legal custody of the child from [her] and no termination of [her] parental rights . . . by the juvenile and domestic relations district court." Coward contends that because the JDR court had entered the last custody and visitation order, the JDR court continued to have jurisdiction. She asserts that the circuit court "lacked jurisdiction" to proceed with the adoption matter and terminate her parental rights. Coward argues that the "present case is a parental placement case and there was a current custody/visitation order in place in the juvenile and domestic relations district court that ought to have been dealt with prior to the filing of the adoption proceeding in the circuit court."

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." Geouge v. Traylor, 68 Va. App. 343, 368 (2017) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion)); see also Lively, 72 Va. App. at 441.

"Subject matter jurisdiction is a threshold question. It is a question of law we review *de novo*." Knight v. Ottrix, 69 Va. App. 519, 523 (2018) (quoting Parrish v. Fannie Mae, 292 Va. 44, 49 (2016)). "The General Assembly has created a process whereby a parent may place his or her child with adoptive parents. This process for parental placement adoption is codified in Code §§ 63.2-1230 through 63.2-1240." Id. at 525. "Parental placement adoptions may be initiated in a JDR court provided that at least one parent consents to the adoption." Id.

Contrary to Coward's statement, this case was not a parental placement adoption, as Coward did not place the child for adoption with the Josephs. Coward and the Josephs testified that the child was placed with the Josephs to keep her out of foster care, not to be adopted by the Josephs. Furthermore, in November 2019, when the Josephs informed Coward that they wanted to adopt the child, Coward told them that she would not consent to the adoption. "Because this was not a case of parental placement for adoption, and because neither parent consented to the adoption, the JDR court did not have subject matter jurisdiction to address whether the parent's consent was being withheld contrary to the best interests of the child." Id. at 526.

"The adoption must then be 'instituted by petition to a circuit court' of proper venue." Id. at 525 (quoting Code § 63.2-1201). Because the Josephs were residents of Wise County, the Josephs properly filed their petition for adoption in the Wise County Circuit Court. See Code § 63.2-1201 ("Proceedings for the adoption of a minor child and for a change of name of such child shall be instituted only by petition to a circuit court in the county or city in which the

petitioner resides . . . .").  Accordingly, we find that the circuit court had jurisdiction to consider this matter.[4]

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[4] Coward does not challenge the circuit court's finding that she was withholding her consent to the adoption contrary to the best interests of the child, so we will not address that aspect of the circuit court's ruling.