# COURT OF APPEALS OF VIRGINIA

**Record No. 0792-25-2**

NEW HOPE WELLNESS, LLC
v.
SENTARA HEALTH PLANS

Present: Chief Judge Decker, Judges Ortiz and Callins

Argued at Richmond, Virginia

Opinion Issued May 26, 2026

**FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND**
Claire G. Cardwell, Judge

Cullen D. Seltzer (Nathan C. Mortier; William P. "Scott" Daisley III; Sands Anderson PC, on briefs), for appellant.

Belinda D. Jones (Christian & Barton, LLP, on brief), for appellee.

**PUBLISHED OPINION BY
<u>JUDGE DANIEL E. ORTIZ</u>**

Medical providers and insurance companies disputing their Medicaid cost reimbursements can resolve such disputes before the Department of Medical Assistance Services ("DMAS") and must exhaust the agency's administrative remedies before litigating their contract disputes. Absent parties' compliance with the administrative process, the circuit court is without subject matter jurisdiction. In light of our legislature's comprehensive regulatory framework governing Medicaid funds, the mere fact that the dispute between New Hope Wellness, LLC ("New Hope") and Sentara Health Plans ("Sentara") is one of contract interpretation does not change New Hope's obligation to exhaust its administrative remedies first. For this reason, we decline New Hope's invitation to skip the line and allow it to bring an independent challenge to certain reimbursements. Agreeing

with the circuit court's determination that it did not have subject matter jurisdiction to hear New Hope's premature effort at judicial review, we affirm.

BACKGROUND[1]

New Hope is a credentialed behavioral health services provider and entered a Provider Agreement with Sentara, a health insurance carrier, to join Sentara's network. In 2022, Sentara audited New Hope's healthcare claims and found documentation deficiencies in breach of the Provider Agreement. Sentara notified New Hope of its intent to retract $433,381.96 in Medicaid funds overpaid to New Hope. Upon New Hope's request for reconsideration, Sentara upheld its overpayment retraction demand. New Hope internally appealed Sentara's decision, but again the carrier upheld its demand for repayment.

On April 1, 2024, representatives for New Hope and Sentara entered into a Corrective Action Plan ("CAP") related to Sentara's audit findings. The CAP required New Hope to implement corrective measures moving forward to come into compliance with federal and state guidelines and remain within Sentara's network. Among other contractual obligations, the CAP required New Hope to create an "education plan" for their coding and billing staff moving forward, and to follow the billing and recordkeeping guidelines promulgated by DMAS. The CAP also informed New Hope of Sentara's legal obligation to report the discrepancies uncovered by the audit to state and federal authorities. Notably, though, the CAP was silent on the issue of Sentara's retraction demand.

On April 19, 2024, New Hope appealed Sentara's internal decision to DMAS as provided for by Code §§ 2.2-4019, 2.2-4021, and 32.1-325.1. New Hope characterized its appeal as done

---

[1] Although subject matter jurisdiction "requires no factual development or evidentiary record to consider," *Watson v. Commonwealth*, 297 Va. 347, 352 (2019), "[w]e recite what occurred in the circuit court as indicated by the pleadings and other undisputed contents of the record," *Ruderman v. Pritchard*, 76 Va. App. 295, 299 n.2 (2022) (citing *Watson*, 297 Va. at 349-50).

"out of an abundance of caution" due to its position that the CAP had effectively settled and resolved the audit, "cur[ing] any alleged breach of the Provider Agreement by New Hope." On May 3, 2024, New Hope requested that Sentara "formally rescind any demand for remittance, repayment, or retraction" of the disputed funds. Sentara did not do so.

Despite ample statutory authority necessitating New Hope's compliance with the administrative process governing its appeal before DMAS, New Hope filed a complaint for breach of contract against Sentara in the Circuit Court of the City of Richmond on August 28, 2024. New Hope argued that Sentara's retraction demand constituted a breach of the Provider Agreement. Sentara moved to dismiss for lack of subject matter jurisdiction or, alternatively, for a stay pending the conclusion of the DMAS appeal in the case.[2]

At argument on its motion, Sentara explained that its audit of New Hope's behavioral health services for the relevant period was "pretty customary" and that audited providers routinely take advantage of Sentara's internal "reconsideration process and other appeals," just as New Hope had done. Rejecting the notion that the CAP forgave the overpayment demand, Sentara characterized the document as a plan which enabled New Hope to continue to offer behavioral health services through Sentara's network despite the outstanding Medicaid funds subject to its recission demand. New Hope alleged that to subject its breach of contract claim to DMAS's administrative process would cause significant harm to New Hope. New Hope suggested that the CAP was a stand-alone settlement agreement and that, as such, it was within the conventional

---

[2] We denied Sentara's request for leave to file supplemental briefing without prejudice to our taking judicial notice of the outcome of the administrative proceeding. Pursuant to Virginia Rule of Evidence 2:201(a), we take notice that DMAS's final decision upholding Sentara's retraction demand has been issued and that New Hope has appealed that decision to the circuit court in a separate proceeding. Because DMAS's final decision is beyond the scope of our review, this Court expresses no opinion as to whether New Hope's appeal to the circuit court from DMAS's final decision dated July 21, 2025 would be proper.

expertise of the courts to exercise jurisdiction and apply contract interpretation principles to the document.

The circuit court granted Sentara's motion to dismiss, finding that it lacked subject matter jurisdiction to hear New Hope's judicial appeal and that New Hope had failed to appropriately exhaust its available administrative remedies. The circuit court also held that the appeal of Sentara's audit, and the issue of whether the CAP constituted a settlement of New Hope's outstanding repayments, were matters within DMAS's "special competence." In the alternative, the circuit court applied the doctrine of primary jurisdiction in favor of the agency's assertion of jurisdiction over the case. Pointing to its observation that "[t]he CAP appear[ed] to be . . . a typical sanction in an audit dispute," the circuit court found that the enforcement of the CAP fell within DMAS's administrative discretion to resolve the underlying audit dispute. New Hope appeals.

ANALYSIS

Subject matter jurisdiction is a threshold question. *See Knight v. Ottrix*, 69 Va. App. 519, 524 (2018). When a case is most appropriately placed before an administrative agency, our case law is quite clear. "It is a long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Fauquier Cnty. Dep't of Soc. Servs. v. Robinson*, 20 Va. App. 142, 152 (1995) (internal citations omitted). Consequently, if the circuit court lacked subject matter jurisdiction, then this Court has no jurisdiction to provide the relief sought.

I. *Standard of Review*

Subject matter jurisdiction is "a court's power to adjudicate a class of cases or controversies." *In re Commonwealth*, 278 Va. 1, 11 (2009) (quoting *Jenkins v. Dir., Va. Ctr. for Behav. Rehab.*, 271 Va. 4, 13 (2006)). It "can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it." *Pure*

*Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772 (1947)). Evidence of a court's subject matter jurisdiction "must affirmatively appear on the face of the record, that is, the record must show affirmatively that the case is one of a class of which the court rendering the judgment was given cognizance." *Jones v. Commonwealth*, 42 Va. App. 142, 146 (2004) (en banc) (quoting *Owusu v. Commonwealth*, 11 Va. App. 671, 673 (1991)). Because it is a question of law, we review jurisdiction de novo. *See Knight*, 69 Va. App. at 523-24.

"To state the obvious, circuit courts have subject matter jurisdiction over contract disputes," *Pure Presbyterian*, 296 Va. at 56, and "exercise that authority '[u]nless ousted of jurisdiction by law,'" *Ashland, LLC v. Va.-Am. Water Co.*, 301 Va. 362, 370 (2022) (alteration in original) (quoting *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 530 (1974)). "Thus, a circuit court has jurisdiction over a common law contract claim unless a provision of the Constitution or an enactment of the General Assembly strips it of that authority." *Id.* The question becomes whether the legislature has acted to limit the circuit court's jurisdiction in this case. We find that it has.

II. *A comprehensive statutory framework provides an administrative avenue for New Hope to make its arguments.*

As a state receiving Medicaid funds, Virginia is required by federal law to create and maintain an agency that issues regulations governing the Commonwealth's medical assistance program. *See* 42 U.S.C § 1396a(a). DMAS is the state agency responsible for administering Virginia's Medicaid program. Code § 32.1-323; *see also Cmty. Alts. Va. v. Jones*, No. 1882-17-4 (Va. Ct. App. Aug. 7, 2018) (noting DMAS's statutory authority to administer the Virginia Medicaid program); *Avante at Roanoke v. Finnerty*, 56 Va. App. 190, 192-93 (2010) (same). A key aspect of DMAS's statutory duties is to "assure financial accountability" for Medicaid funds expended in Virginia. *Dep't of Med. Assistance Servs. v. Ablix*, No. 0767-14-2 (Va. Ct. App. Mar.

17, 2015) (citing 42 C.F.R. § 441.302(b)). The Director of DMAS is statutorily authorized to exercise DMAS's administrative discretion to "[m]ake rules and regulations that it follows in administering the plan." 42 C.F.R. § 431.10(b)(2)(ii).

This Court has long acknowledged that DMAS has the "experience and competence necessary to determine the reimbursement due qualified providers for their reasonable costs incurred while delivering health care services." *Fralin v. Kozlowski*, 18 Va. App. 697, 701 (1994) (referencing DMAS's statutory authority under Code §§ 32.1-323 to -331.06). To that end, the General Assembly vested the Director with the power to audit Medicaid providers and collect overpaid Medicaid funds. Code § 32.1-325.1:1(B); *see also Smith v. Liberty Nursing Home, Inc.*, 31 Va. App. 281, 288 (2000) (discussing the authority of the Director of DMAS to recover overpayments from Medicaid providers). If providers dispute DMAS's determinations, they can seek an informal fact finding proceeding under the Virginia Administrative Process Act ("VAPA"). Code § 2.2-4019. If still unresolved, the dispute is then eligible for a formal administrative hearing under Code § 2.2-4020.

Only *after* DMAS makes a final agency decision does an aggrieved party have the right to judicial review under Code § 2.2-4026. This is because Virginia has long acknowledged that litigants must exhaust their prescribed administrative remedies before they are "entitled to judicial relief." *Fauquier Cnty.*, 20 Va. App. at 152 (explaining the exhaustion requirement).[3] Thus, a

---

[3] The exhaustion requirement is a "long settled rule," and Virginia is not unique in requiring litigants to abide by it. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) (explaining the federal exhaustion requirement); *see Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 (4th Cir. 2002); *Taylor-Callahan-Coleman Cntys. Dist. Adult Prob. Dep't v. Dole*, 948 F.2d 953, 958-59 (5th Cir. 1991) (dismissing for failure to exhaust remedies under FLSA); *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478 (9th Cir. 1995) (same for ERISA claimants); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006) (explaining policy reasons for the exhaustion requirement).

Medicaid provider who disagrees with a determination on Medicaid funds has an obligation to comply with the administrative process before appealing to this Court.

    III. *New Hope's actions demonstrate that it took advantage of its prescribed administrative remedies, and the current proceeding before this Court is improper.*

New Hope assigns error to the circuit court's finding that it lacked subject matter jurisdiction to determine whether the CAP constituted a settlement contract. It argues that because contract disputes fall within the statutorily granted expertise of the courts, DMAS lacks expertise to interpret the CAP, an alleged settlement contract. Essentially, on appeal, New Hope asks this Court to adopt New Hope's view that the case is merely a contract dispute. We reject New Hope's characterization.

New Hope and Sentara jointly entered the CAP after Sentara's audit and resulting demand for repayment of overpaid Medicaid funds. By its own terms, the CAP explains that it is designed to bring New Hope into compliance with "state and federal guidelines and [its] contract with [Sentara]." At bottom, the dispute between New Hope and Sentara is one concerning Medicaid funds and the repayment thereof. The General Assembly has enacted a comprehensive statutory scheme contemplating administrative and judicial review of determinations that affect those Medicaid funds. *See* Code §§ 32.1-323 to -331.06. This Court can assume that both parties were fully aware of this fact, and of the overall statutory scheme governing the disbursement and collection of Medicaid funds. Despite New Hope's assertions otherwise, there is nothing about the contractual form of the CAP which, in itself, puts it beyond DMAS's purview.

Here, New Hope had a series of administrative remedies available by virtue of the comprehensive statutory scheme governing Medicaid funds. Recognizing this, New Hope initiated the DMAS review process. Under this process, New Hope was entitled to both an informal fact-finding review *and* a formal hearing before DMAS. *See* Code §§ 2.2-4019 to -4020. Only once *both* of those processes are undertaken and a final DMAS decision rendered, can New Hope *then*

- 7 -

initiate the judicial review process under Code § 2.2-4026. The fact that its dispute centers on disbursed Medicaid funds mandates that we adhere to the process prescribed by the legislature. As a Medicaid provider, New Hope is fully aware of the extensive regulations that govern its participation in the Medicaid program. Creative arguments do not change the fact that New Hope must respect the rules of engagement in Virginia's Medicaid program.

By so finding, we do not hold that New Hope is precluded from judicial review altogether. Rather, judicial review must come at the conclusion of the administrative process, a rule known to New Hope when it filed its administrative appeal. But because DMAS had not issued its final agency decision when New Hope appealed this matter to the circuit court, and New Hope still maintained the ability to appeal the final agency decision, the circuit court was correct in holding that it lacked subject matter jurisdiction.

IV. *We decline to assert jurisdiction.*

Without subject matter jurisdiction, a court "cannot proceed at all in any cause," and the only function remaining to the court is "that of announcing the fact and dismissing" the case. *Pure Presbyterian*, 296 Va. at 50 (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)); *see also Morrison v. Bestler*, 239 Va. 166, 170 (1990) (holding that any judgment made on the merits without subject matter jurisdiction is void). We conclude that this Court lacks subject matter jurisdiction to weigh the parties' arguments in this case because the General Assembly divested the circuit courts of such power, and we decline to reach the merits of New Hope's other arguments on these grounds.[4] New Hope is required to exhaust its statutorily-prescribed remedies from DMAS before seeking judicial intervention. Accordingly, our review is at its end.

---

[4] By concluding that we lack jurisdiction to address New Hope's arguments in the present appeal, we note that our decision does not strip New Hope of its opportunity to challenge Sentara's characterization of the CAP. But New Hope was correct to first file its administrative appeal with DMAS, and our judicial review cannot take place during the pendency of the administrative process.

CONCLUSION

Ultimately, New Hope asks this Court to overstep its jurisdictional bounds on appeal, and we decline to do so. For the reasons discussed in this opinion, we affirm the circuit court's dismissal of New Hope's judicial appeal for lack of subject matter jurisdiction during the pendency of its administrative proceeding.

*Affirmed.*