COURT OF APPEALS OF VIRGINIA

Present:    Judges Russell, Lorish and Senior Judge Annunziata
Argued by videoconference


ANITA SHANA-NICOLE SIMMS

                                                            OPINION BY
v.        Record No. 0479-21-4                   JUDGE LISA M. LORISH
                                                            APRIL 5, 2022

ALEXANDRIA DEPARTMENT OF
  COMMUNITY AND HUMAN SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              Lisa B. Kemler, Judge

              Neal Goldberg (JustCause Counsel, PLLC, on briefs), for appellant.

              Matthew W. Greene, Special Assistant City Attorney (Joanna C.
              Anderson; Jill A. Schaub; Gerylee M. Baron, Guardian *ad litem* for
              the minor children; Greene Law Group PLLC; Office of the City
              Attorney; Law Office of Gerylee M. Baron, on brief), for appellee.


        The issue in this appeal is whether a trial court has jurisdiction to enter an order

terminating parental rights while an abuse and neglect determination involving the same parent

and child is pending appellate review. We conclude that it does. We also find no error with the

court's termination of mother's residual parental rights.

                                       BACKGROUND[1]

        "On appeal from the termination of parental rights, this Court is required to review the

evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford*

---

        [1] This record was sealed. But the appeal requires unsealing relevant portions of the
record to resolve the issues appellant has raised. Evidence and factual findings below necessary
to address the assignments of error are included in this opinion. As a result, "[t]o the extent that
this opinion mentions facts found in the sealed record, we unseal only those specific facts,
finding them relevant to the decision in this case. The remainder of the previously sealed record
remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

*Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (internal quotation omitted).  Here, the

Alexandria Department of Community and Human Services ("the Department" or "ADCHS")

was the prevailing party.

In June 2019, Anita Shana-Nicole Simms ("mother") gave birth prematurely to twins

who were hospitalized for seven weeks in the neonatal intensive care unit.[2]  Mother did not have

custody of any of her other five children, and her parental rights for three of those children were

previously involuntarily terminated.[3]

The Department quickly filed abuse and neglect petitions against mother for reasons we

summarized as follows:

> On June 8, 2019, ADCHS received allegations that mother had
> physically neglected the children, who were born prematurely that
> day.  During her high-risk pregnancy, mother did not seek any
> prenatal care and tested positive for PCP twice.  Mother had
> admitted, after she learned of her pregnancy, to using PCP, a drug
> she had abused for many years. Mother had a history with ADCHS
> due to the department's involvement in terminating her parental
> rights to her other three children.  Her 2017 parental capacity
> assessment showed that she suffers cognitive limitations, has
> bipolar personality disorder, and is inconsistent with mental health
> treatment.  Consequently, the 2017 report concluded that she is at
> risk for future child neglect.  Notably, the trial court had previously
> made abuse or neglect findings against mother with respect to three
> of her other children.

*Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 0915-20-4, slip op. at 2-3 (Va. Ct. App.

June 15, 2021).

---

[2] The twins' biological father did not contest the termination of his parental rights at the circuit court hearing.

[3] *See Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 1357-19-4 (Va. Ct. App. Feb. 4, 2020); *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 1852-17-4 (Va. Ct. App. Apr. 24, 2018).

A. Procedural Background

The Alexandria Juvenile and Domestic Relations District ("JDR") court entered emergency removal orders under Code § 16.1-251 at the end of July 2019, placing the twins in foster care. As required by the same statute, the JDR court held a preliminary hearing after these emergency removals and found that the Department had proved abuse or neglect by the preponderance of the evidence and entered corresponding adjudicatory and dispositional orders. The dispositional order returned the twins to foster care with the goals of either returning the twins to the care of their father or adoption. Mother appealed these orders to the circuit court. While that appeal was pending, the JDR court held a foster care review hearing which approved the singular goal of adoption.

In March 2020, the circuit court held its *de novo* hearing and found that mother had abused or neglected the twins.[4] Mother then appealed the circuit court's adjudicatory and dispositional orders to this Court.

A month later, the Department petitioned for permanency planning with the JDR court requesting termination of mother's parental rights to facilitate the goal of adoption. The JDR court entered permanency planning orders approving the foster care goal of adoption and also terminated mother's parental rights to the twins in May 2020. Mother appealed the JDR court's rulings to the circuit court.

Before the hearing, mother moved to stay the proceedings. Mother argued that the circuit court should not hear her appeal of the JDR court's termination orders until after this Court had ruled on her pending appeal of the adjudicatory and dispositional orders because one would impact the other.

---

[4] The factual basis for this determination, not relevant here, is summarized in *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 0916-20-4 (Va. Ct. App. June 15, 2021).

The circuit court heard arguments on this motion. Mother emphasized that she faced the risk of a "premature severance that cannot easily be undone" if the circuit court proceeded with the termination of her parental rights while her appeal to this Court was pending. The Department proffered that the abuse and neglect finding was only "[t]angentially" related to the termination proceeding because it was relying on the prior involuntary termination of mother's rights for siblings of the twins and that termination was in the twins' best interests (*see* Code § 16.1-283(E)(i)) and not on the prior abuse and neglect determination (*see* Code § 16.1-283(B)). The Department also argued that if this Court reversed the circuit court's finding of abuse and neglect, any termination or permanency planning order entered by the circuit court "would be deemed void as a matter of law." When the circuit court questioned whether proceeding was "the most judicially efficient way of handling things," the Department emphasized that it was in the children's best interests to achieve finality.

The circuit court denied mother's "motion to essentially stay [the] matter" pending this Court's resolution of the appeal of the adjudicatory and dispositional orders. The circuit court found that if mother prevailed on her appeal, the Department was "on the record as saying that any ruling today that results in the termination of [mother's] residual parental rights to [the twins] would be null and void." The hearing proceeded on the merits.

## B. Factual Background

In the time between the initial removal of the twins from mother's care and the ultimate termination of her parental rights, the Department tried to work with mother,[5] requiring her to

---

[5] By statute, reasonable efforts to reunite the twins with mother were not required because mother's residual parental rights had been involuntarily terminated for siblings of the twins. *See* Code § 16.1-281(B).

participate in mental health services and comply with all treatment recommendations.[6] After the twins entered foster care, the Department referred mother to the Alexandria Community Services Board for mental health and substance abuse evaluations, as well as case management services. While mother appeared to have a good working relationship with the Court Appointed Special Advocate ("CASA"), her relationship with the Department was strained and worsened over time. While mother provided information to CASA about her housing, employment, and therapy sessions, she refused to provide similar information to the Department for their verification.

After learning that mother lived in a two-bedroom home in Alexandria, the Department asked for more information about her housing situation, but mother would not say whether anyone else was living with her, and she refused to allow the Department's social worker to visit her home. A CASA advocate did visit the Alexandria home at one point and found it to be "neat and clean," and mother told the advocate that no one else lived with her there. The Department later heard that mother had moved "outside of the city," but mother provided no verification for her new housing.

The Department also required mother to participate in substance abuse services, comply with all treatment recommendations, and submit to drug testing. Mother provided documentation to CASA confirming she attended at least two substance abuse group sessions. But after testing positive in November 2019 and January 2020, mother refused to comply with

---

[6] Shortly before the twins' birth, mother was hospitalized for eleven days for psychiatric treatment. The Department was also already aware that mother had several mental health diagnoses that required "regular monitoring" from prior experience with mother and her other children. In 2017, mother participated in a parental capacity assessment; the evaluator diagnosed mother with Bipolar I Disorder, Phencyclidine Use Disorder (Severe), and Other Specified Personality Disorder (mixed personality trait). The evaluator contended that mother's mental health and substance abuse impacted her functioning and parenting ability and suggested there was a risk for future child neglect.

drug testing in February 2020 and rejected the Department's efforts to implement a plan to address her substance abuse issues.

Likewise, mother first underwent mental health treatment from March 2020 to October 2020 with the Alexandria Community Services Board. But then she moved from Alexandria to Fairfax County. Mother's therapist recommended that she continue with therapeutic services in Fairfax County and seek psychiatry services and substance abuse treatment to manage her symptoms and maintain her sobriety. But mother testified that she consulted the new community services board which concluded she did not need additional services. Mother had contacted no other mental health providers or substance abuse therapists since.

Mother became similarly uncooperative with the Department's requests for verification of her employment, which reportedly was unstable and inconsistent. Mother testified, however, that she had worked at a gas station for eight months and provided a letter from her employer verifying her work schedule.

Mother also failed to provide the Department with her plan for childcare arrangements or pediatric care for the twins, which concerned the Department given their premature birth. Yet she testified that if she gained custody of the twins, her mother could care for the twins while she was at work or that they could go to a daycare provider within walking distance of her home. Mother acknowledged that she did not have a car and relied on public transportation, Uber, and Lyft.

As for mother's contact with the twins over this nearly two-year period, she visited the twins daily in the hospital before they were discharged and moved into foster care. After that, the Department first offered mother weekly supervised visitation. Mother arrived late to some visits and "struggled to regulate her emotions," which the Department recognized could be attributed to her separation from the twins. Then, at mother's last in-person visit with the twins

at the Department's office in late 2019, she "announced that the visit was going to take place across the street at the elementary school." The social worker reminded mother that she could not make those decisions but offered to seek approval from his supervisor. Without waiting for permission, mother "grabbed the children" and left the building. The social worker "rush[ed] outside" and advised mother to wait in the visitation room. As the social worker moved toward one of the infant carriers, mother "snatched the baby away." After the social worker informed mother that her behavior was "inappropriate" and that the police would be called if it continued, the Department ended the visit. The twins were not harmed. Mother admitted that she was sometimes emotional during these visits but denies threatening the social worker. She also testified that she would cooperate with the Department and was "willing to do . . . anything" if the circuit court did not terminate her parental rights.

CASA confirmed that mother was consistent in her desire to maintain a relationship with the twins. For example, she purchased presents for the twins for Christmas, and she said she had beds and clothing for them in her home.

Finally, the Department presented evidence that the twins were about twenty-one months old and "doing well," living with a paternal cousin and her family. The twins participated in occupational and physical therapy and were meeting developmental milestones despite their premature birth.

Mother's evidence included the testimony of the twins' maternal grandmother who cared for mother's four oldest children. The grandmother testified that mother had "made a great deal of very, very, responsible and great changes in her life" and that she had employment and housing. The grandmother also said she could help with the twins and was even willing to "provide a permanent placement" if necessary, while acknowledging she had filed custody petitions for the twins that the JDR court dismissed without her objection.

After hearing all the evidence and arguments, the circuit court terminated mother's parental rights to the twins under Code § 16.1-283(E)(i) and approved the foster care goal of adoption. Mother filed her notice of appeal on May 7, 2021. A month later, this Court affirmed the circuit court's abuse and neglect adjudicatory and dispositional orders. *See Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, No. 0916-20-4 (Va. Ct. App. June 15, 2021).

ANALYSIS

Mother argues that the circuit court erred by not granting her motion to stay or continue the hearing to terminate her parental rights because the court had no jurisdiction to terminate her parental rights while her appeal of the abuse and neglect determination was still pending before this Court.[7] We review a ruling on a motion for a continuance for abuse of discretion, "guided by our holding over a century ago . . . that when a circuit court's refusal to grant a continuance 'seriously imperil[s] the just determination of the cause,' the judgment must be reversed." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007) (quoting *Myers v. Trice*, 86 Va. 835, 842 (1890)). A circuit court "by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (internal quotation omitted). In addition, the party challenging the denial of a motion for a continuance must show prejudice. *Bailey v. Commonwealth*, 73 Va. App. 250, 265 (2021).

Because mother questions whether the court had jurisdiction to terminate her parental rights, we address that fundamental question first, and then examine the court's ruling on the motion to stay. A challenge to a trial court's jurisdiction is a question of law that we review *de novo*. *Reaves v. Tucker*, 67 Va. App. 719, 727 (2017).

---

[7] The relevant assignment of error states: "The circuit court erred in denying Mother's motion to continue or stay the proceedings when the circuit court did not retain jurisdiction—pursuant to Virginia Code § 16.1-242.1—to hear petitions to terminate parental rights while Mother had cases on appeal to this Court involving the same children in foster care."

Both mother and the Department focus on whether Code § 16.1-242.1 reserves jurisdiction for a lower court to terminate a parent's residual rights while an appeal of an abuse and neglect determination is pending.[8] Mother argues that because this statute only reserves jurisdiction for a lower court to hear petitions filed under Code §§ 16.1-282 and 16.1-282.1, and does not mention petitions for termination of parental rights under Code § 16.1-283, her appeal took jurisdiction away from the circuit court and nothing gave it back again. Because the circuit court's jurisdiction is "derivative of and thus dependent upon the jurisdiction of the JDR court," the jurisdiction of the JDR and circuit courts are equivalent. *Knight v. Ottrix*, 69 Va. App. 519, 526 (2018); *see* Code § 16.1-296(I).[9] In sum, mother argues that Code § 16.1-242.1 prevented the circuit court from hearing *anything* other than petitions under Code §§ 16.1-282 or 16.1-282.1.

---

[8] The statute provides that

> [u]pon appeal to the circuit court of any case involving a child placed in foster care and in any appeal to the Court of Appeals or Supreme Court of Virginia, the juvenile court shall retain jurisdiction to continue to hear petitions filed pursuant to §§ 16.1-282 and 16.1-282.1. Orders of the juvenile court in such cases shall continue to be reviewed and enforced by the juvenile court until the circuit court, Court of Appeals or Supreme Court rules otherwise.

Code § 16.1-242.1.

[9] Mother does not specify whether her argument is that the circuit court lacked potential (subject matter) jurisdiction, or active jurisdiction. Because mother raised her jurisdictional argument below, we need not decide whether a timely notice of appeal divests a circuit court of subject matter jurisdiction (making an order void), or only of active jurisdiction for that particular matter (making an order voidable). *Yourko v. Yourko*, 74 Va. App. 80, 97 (2021) ("[A]n order that is void *ab initio* may be attacked beyond twenty-one-days from judgment by a party to the proceeding," but "[i]f found voidable, such an order may only be set aside consistent within the framework of Rule 1:1 and proper appellate proceedings."). The result would be the same.

The Department responds that the reservation of jurisdiction to hear petitions under Code §§ 16.1-282 and 16.1-282.1 necessarily also confers jurisdiction to terminate parental rights because these code sections are interdependent and refer to each other: both Code §§ 16.1-282[10] and 16.1-282.1[11] mention the termination of parental rights under Code § 16.1-283.

We conclude, however, that Code § 16.1-242.1 is a grant of continuing jurisdiction over petitions filed under Code §§ 16.1-282 and 16.1-282.1 but does not strip a lower court of its jurisdiction to hear a petition for the termination of parental rights under Code § 16.1-283. Because the circuit court independently had jurisdiction over the separate matter of termination, no "reservation" of jurisdiction was necessary. *See Alfarqui v. Newport News Dep't of Hum. Servs.*, No. 0469-14-1, slip op. at 3-4 (Va. Ct. App. Sept. 23, 2014) (concluding appeal of permanency planning order was separate matter from termination of parental rights because purpose of each hearing was different).

1. *Once a final order is entered, a timely notice of appeal transfers jurisdiction over that matter to the appellate court.*

In general, a trial court's jurisdiction expires twenty-one days after the entry of a final judgment. Rule 1:1(a). Unless a rule or statute provides otherwise,

> a judgment, order, or decree is final if it disposes of the *entire matter before the court*, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order or decree.

---

[10] Code § 16.1-282 governs foster care review hearings, during which the court reviews progress made on the foster care plan. It provides that the court must include certain information in the foster care review order, should it have "the effect of achieving a permanent goal for the child by terminating residual parental rights pursuant to § . . . 16.1-283 . . . ." Code 16.1-282(E). This section also does not require a permanency planning hearing "in the case of a child who is the subject of an order that has the effect of achieving a permanent goal for the child by terminating residual parental rights pursuant to § . . . 16.1-283." Code § 16.1-282(G).

[11] Code § 16.1-282.1 governs permanency planning hearings, when the court establishes a permanent goal for the child and can act to achieve this goal. One such action is to "seek to . . . terminate residual parental rights pursuant to § . . . 16.1-283." Code § 16.1-282.1(A).

Rule 1:1(b) (emphasis added). This rule implements the "strong policy reasons favoring certainty of results in judicial proceedings." *McEwen Lumber v. Lipscomb Bros. Lumber*, 234 Va. 243, 247 (1987).

When a notice of appeal is timely filed, however, the proceeding is not over, but transferred to the jurisdiction of the appellate court. "The orderly administration of justice demands that when an appellate court acquires jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken must cease." *Greene v. Greene*, 223 Va. 210, 212 (1982). Thus, upon the filing of a notice of appeal, "that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'" *McCoy v. McCoy*, 55 Va. App. 524, 528 (2010) (internal quotation omitted). There are exceptions.[12] Relevant here, an appeal does not divest the trial court of jurisdiction over ancillary matters reserved to it by statute. *Askew v. Commonwealth*, 49 Va. App. 127, 136-37 (2006); Rule 1:1B(a)(3)(H).

This case asks us to decide the contours of the "subject matter" of the controversy before the trial court when it determined that mother had abused and neglected her twins. In other words, when mother timely noticed her appeal of the final dispositional orders of abuse and neglect, was jurisdiction over a parental termination proceeding also transferred to the appellate court because they were the same matter? We conclude it was not based on our interpretation of the statutory framework governing the care for children who are abused or neglected.

In interpreting the relevant statutes here, our primary goal is to "ascertain and give effect to the intention of the legislature." *Chase v. DaimlerChrysler Corp.*, 266 Va. 544, 547 (2003).

---

[12] Rule 1:1B(a)(3)(A)-(H) lists several instances when a court "retains concurrent jurisdiction" during an appeal.

"[W]henever a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each." *Boynton v. Kilgore*, 271 Va. 220, 229 (2006) (internal quotation omitted). Indeed, statutes that "relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments." *Moreno v. Moreno*, 24 Va. App. 190, 197-98 (1997) (quoting *Alger v. Commonwealth*, 19 Va. App. 252, 256 (1994)).

Several aspects of the statutory framework lead us to conclude that the General Assembly intended for an adjudication of abuse and neglect to be considered a separate matter in controversy from parental termination.

### 2. The legislature separately conveyed jurisdiction for dispositions of abuse and neglect and for parental termination, signifying that they are separate matters.

JDR courts are courts of limited jurisdiction. *Ottrix*, 69 Va. App. at 524 (quoting *Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016)). Code § 16.1-241 gives authority to JDR courts over the "custody, visitation, support, control or disposition of a child" in seven circumstances. One such circumstance is "where the termination of residual parental rights and responsibilities is sought," *id.*, so we readily conclude that a JDR court generally has jurisdiction over proceedings to terminate residual parental rights. The only question here is whether that jurisdiction has been taken away for some other reason—such as the appeal of the same subject matter.

The structure of the rest of the jurisdictional statute confirms that abuse and neglect determinations are of a different subject matter. Some of the other specifically delineated circumstances where a JDR court has jurisdiction over the "custody, . . . or disposition of a child" include where a child is "alleged to be abused [or] neglected," when a child is "charged with a traffic infraction as defined in § 46.2-100," and when a child is "alleged to have refused to take a blood test in violation of § 18.2-268.2." Code § 16.1-241(A)(1), (6), (7). If a court automatically had jurisdiction to terminate parental rights by virtue of having jurisdiction over

the disposition of an abuse and neglect allegation—if they were the same matter—there would be no reason for the legislature to have listed them separately. Considering the other jurisdiction-conveying occurrences, no one would confuse the disposition of a traffic offense committed by a minor as the same case or matter as permanent parental termination of rights. So there is no reason to suspect the legislature wants us to confuse an abuse and neglect determination and the termination of parental rights as the same either.

    3. *The legislature has affirmed that foster care placements should be temporary and that parental termination should not be delayed unnecessarily.*

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) (internal quotation omitted). The legislature has repeatedly expressed its intent that it is in the best interests of children to receive a permanent placement without languishing in the foster system. Code § 16.1-281(B) ("child's health and safety shall be the paramount concern of the court and the agency throughout the placement, case planning, service provision and review process").

The legislature recently made additional changes to the framework that again confirm the intention to move children to permanent placement quickly. After a Joint Legislative Audit and Review Commission Report on the Virginia foster care system noted significant delays in adoptions for children in foster care, the legislature adopted one of the report's recommendations to remedy such delays. *See* Code § 16.1-282.1 (requiring justification where petition to terminate parental rights not filed whenever a child had been in state custody for fifteen of the most recent twenty-two months).[13] Previously, the legislature followed the federal Adoption and

_____

[13] The report found that Virginia had significant delays in adoptions for children in foster care and one "reason why adoptions may be delayed longer than necessary is that local departments are not filing for termination of parental rights (TPR) in the juvenile and domestic

Safe Families Act in easing termination requirements to no longer require reasonable efforts at reunification with parents in every termination case. *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 272 n.8 (2005); Code § 16.1-281(B).

Given the paramount importance of the child's best interest and the need to place them in safe, permanent homes within a reasonable time, whenever possible, we will construe the statutory framework to bring about this intent. As a result, we find the General Assembly's desire to move a child to a permanent placement quickly to be further persuasive evidence that the legislature did not intend for termination petitions to be delayed while an appeal of an abuse and neglect determination takes place.[14] This is all the more evident given that Virginia is already one of the few states that allows for multiple levels of appeal for every stage of the process.[15]

---

relations court (J&DR) in a timely manner." J. Legis. Audit and Rev. Comm'n, Report to the Governor and the General Assembly of Virginia: Improving Virginia's Foster Care System 513 (2018) ("JLARC Report").

[14] Mother has raised no constitutional challenges here, but even so, we in no way minimize the significance of permanently terminating a parent's rights. A parent has a "fundamental liberty interest[]" in the "care, custody, and control" of her children. *Bedell v. Price*, 70 Va. App. 497, 504-05 (2019). This interest is grounded in the Due Process Clause of the Fourteenth Amendment and "state interference with that right must be justified by a compelling state interest." *Williams v. Williams*, 24 Va. App. 778, 780 (1997), *aff'd as modified*, 256 Va. 19 (1998). In any event, our case law makes clear that these due process rights are generally vindicated through notice requirements and the heightened standard of proof (clear and convincing evidence) that apply in termination proceeds. *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982); *see also Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 405 (2012) (finding that Virginia's statutory scheme "provide[s] parents with 'fundamentally fair' procedures under the Due Process Clause" even though "[t]he severity of permanently separating children from their parents is a significant and compelling circumstance").

[15] JLARC Report at 53. Because JDR courts are not courts of record, an aggrieved party may receive *de novo* review from the circuit court, and then another level of review from this Court, and finally the Supreme Court. Appeals involving the termination of parental rights are given special priority by statute. Code § 16.1-296(D) (requiring circuit court to hold hearing on merits within ninety days of perfecting appeal and requiring this Court to give such appeals precedence).

*4. The separate statutory processes for disposition of an abuse and neglect petition and for parental termination confirm that they are separate matters.*

In comparing a disposition on an abuse and neglect petition with an order terminating parental rights, several differences are immediately obvious. An abuse and neglect disposition is—by design—open to constant revision and re-review. We have explained that a dispositional order is "not a 'final order' in the conventional sense of the term" because of these features. *Blevins v. Prince William Cnty. Dep't of Soc. Servs.*, 61 Va. App. 94, 98 (2012); Code § 16.1-278.2. In addition, where a dispositional order places a child in the custody of the state, there are regular review processes built into the statutory framework to ensure that any foster placement is working, and to bring about a permanent placement as soon as practicable.

There are statutory deadlines to facilitate these goals. The appropriate agency must quickly file a foster care plan that includes long-term goals for a child, and the court must review it within sixty days. Code § 16.1-281(C). A permanency planning hearing must be held within ten months of when the initial foster care plan was reviewed.[16] Code § 16.1-281.1. At this permanency planning hearing, a court is only allowed to approve another interim plan delaying a permanent outcome under limited circumstances. *Id.*

Inherent in this entire process is flexibility, and concern for the child's best interests. At the same time, despite the lack of finality, the "General Assembly has determined that a 'dispositional order' entered by a J & DR court in an abuse and neglect case constitutes a 'final order from which an appeal may be taken.'" *Blevins*, 61 Va. App. at 99 (quoting Code § 16.1-278.2(D)). This decision by the legislature "makes perfect sense" because "[w]aiting for a final order that 'disposes of the whole subject' and 'leaves nothing to be done' in this context

_____

[16] The Department filed the petition seeking termination of mother's parental rights in April 2020, and the permanency planning hearing in the JDR court was held in May 2020.

would generate significant delay before appellate review" and "[s]uch delays would ill serve the interests of children, parents, and the interests of the state." *Id.*

Yet if the appeal of a dispositional order in an abuse and neglect case transferred all jurisdiction over the continuing question of where the child should live, and with whom, the rest of the statutory requirements for foster care review and permanency planning could not be met. So Code § 16.1-282.1 specifically reserves jurisdiction for the lower courts to take up both tasks while appeals are pending. Rightly understood, this statute conserves the ability of trial courts to protect children during dispositional order appeals. We can assume the legislature believed these various steps to be essential to the same matter or the reservation of jurisdiction in Code § 16.1-282.1 would have been unnecessary.

In sum, an abuse or neglect adjudication is temporary and can result in any number of possible outcomes.[17] On the other hand, the termination of parental rights is, as the name suggests, permanent and not subject to further modification.[18] It is also a prerequisite to adoption. Termination requires a heightened evidentiary showing (clear and convincing evidence) and a separate petition providing notice to all interested parties. *Toms*, 46 Va. App. at 266. The Department must prove termination is warranted under one of the paths set out in Code § 16.1-283. While a prior adjudication of abuse and neglect is the threshold to one path under the statute, termination is not dependent in any way on the prior adjudication.

Indeed, where a prior neglect and abuse determination led to a child's placement in foster care, the court must still find by clear and convincing evidence not only that termination is in the

---

[17] For instance, the child may be placed in state custody or the custody of a relative with a legitimate interest, while the permanent goal for the child may be adoption, or reunification with the parent after the conditions leading to the finding of abuse and neglect have been remedied.

[18] Code § 16.1-283.2 provides scant circumstances where a petition to restore previously terminated parental rights may be filed.

best interests of the child but that "[t]he neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development" and that "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." Code § 16.1-283(B). In other words, the abuse or neglect determination does not rest on its own—a court must still look to and evaluate the circumstances of that abuse or neglect—and under the clear and convincing evidence standard.

Simply put, termination orders rest on their own factual determinations, and their own merits.

Additionally, any ruling the trial court made on the petition to terminate parental rights would not have affected, in any way, this Court's ability to decide the appeal of the earlier abuse and neglect adjudication. A lower court is divested of jurisdiction while a matter is on appeal to facilitate "[t]he orderly administration of justice." *Greene*, 223 Va. at 212. For this reason, "[t]he appeal of a final order divests the trial court of authority to modify, amend or change *that order* until the appellate court has acted." *Holden v. Holden*, 35 Va. App. 315, 326 (2001) (emphasis added). Nothing about the termination of parental rights operated to "pull the rug out" from under this Court's appellate jurisdiction in the other matter—again confirming that the matters are separate.

Finally, we consider all these differences in the shadow of Rule 1:1, which establishes the general limit on a court's jurisdiction after a judgment is "final." The rule explains that a matter is "final," when the "entire matter" of a case is resolved, and the "entire matter" includes "all claim(s) and all cause(s) of action against all parties," and "all the relief contemplated." Applying this definition of the "entire matter," we can be confident that the entire abuse and neglect disposition matter could reside within the jurisdiction of this Court while the trial court

- 17 -

simultaneously took up the petition to terminate parental rights. There is simply no overlap in the claims or relief contemplated.

> 5. *The circuit court had jurisdiction over the termination hearing and did not otherwise abuse its discretion in denying the motion to stay or continue.*

In concluding that the circuit court had jurisdiction over the termination petition, we are guided by the statutory scheme the legislature has enacted. We do not substitute our own policy judgment as to whether this is an advisable outcome. "We can only administer the law as it is written." *Coalter v. Bargamin*, 99 Va. 65, 71 (1901). While the legislature could elect to give parents more rights,[19] the existing scheme provides significant procedural safeguards to parents. A court may only order the termination of parental rights after reviewing a termination petition and upon a hearing specifically called for that purpose. Each termination order relies on an independent finding that clear and convincing evidence supports at least one of the grounds for termination under Code § 16.1-283. Parents then have the right to an expedited appeal. *See* Code § 16.1-296(D) (requiring the circuit court to hold a hearing on merits within ninety days of perfecting appeal and requiring this Court to give such appeals precedence).

Because the court had jurisdiction, the court did not err as a matter of law in denying mother's motion for a continuance or stay. *See Porter*, 276 Va. at 260 (affirming that an error of law is an abuse of discretion). Nor did the court otherwise abuse its discretion by "seriously imperil[ing] the just determination of the cause." *Haugen*, 274 Va. at 34. The circuit court found that termination was appropriate under Code § 16.1-283(E), which relied not on the prior

---

[19] The legislature in North Carolina made such amendments. *See In re R.T.W.*, 614 S.E.2d 489, 553 (N.C. 2005) (finding that trial courts retained jurisdiction to terminate parental rights during a custody order appeal involving the same child), *superseded by statute*, N.C. Gen. Stat. § 7B-1003(b) (2005), *as recognized in In re M.I.W.*, 722 S.E.2d 469, 472-73 (N.C. 2012) (reciting that the North Carolina General Assembly amended the relevant statute a year after *In re R.T.W.* to prohibit trial courts from terminating parental rights while an appeal from a custody order is pending).

abuse or neglect determination but the prior terminations of mother's parental rights for siblings of the twins. As termination did not rest on the prior abuse and neglect disposition, mother could not have been prejudiced by the termination proceeding going forward.

      *6. The circuit court's conclusion that termination was warranted on these facts was not plainly wrong.*

Mother also argues that the circuit court erred in terminating her parental rights and approving the foster care goal of adoption for two reasons.[20] First, because termination of her parental rights and adoption were not "the least restrictive means" to protect the children from serious harm. Second, she asserts that termination of her parental rights and adoption was not in the twins' best interests.

We presume the court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (internal quotation omitted). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (internal quotation omitted).[21] Furthermore, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence

---

[20] The Department counters that mother did not preserve her arguments for appeal because she did not renew her motion to strike after she presented evidence. We disagree and find that mother preserved her arguments in her closing summation. "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for [her] objection in a motion to strike the evidence *or in closing argument*.'" *Moncrief v. Div. of Child Support Enf't ex rel. Joyner*, 60 Va. App. 721, 729 (2012) (emphasis added) (quoting *Lee v. Lee*, 12 Va. App. 512, 515 (1991)).

[21] *Ore tenus* simply means orally. *Ore Tenus*, *Black's Law Dictionary* (11th ed. 2019).

as it is presented." *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)).

As discussed above, the circuit court terminated mother's parental rights under Code § 16.1-283(E)(i), which authorizes termination of parental rights where a child is in the custody "of a local board or licensed child-placing agency . . . if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated." In addition, before terminating a parent's rights, "the court shall give a consideration to granting custody to a person with a legitimate interest" in the same. Code § 16.1-283(A). Mother points to no Virginia case or statute that required the circuit court to find termination was the "least restrictive means" of protecting the twins from serious harm. And she does not argue on appeal that the court failed to consider granting custody to a person with a legitimate interest.

We find no error in the circuit court's application of the framework the legislature set into place for termination of parental rights. The court took judicial notice (without objection) that mother's rights had previously been involuntarily terminated for siblings of the twins, and then applied the best interests of the child analysis. In concluding that termination and adoption were in the best interests of the twins, the court explained that "there comes a point in time where the children need to have permanency." *See also Harrison*, 42 Va. App. at 162 (it is "clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if" return to a birth parent is possible). The twins were almost two years old and "thriving," but mother remained unable to care for them.

In reaching this conclusion, the circuit court voiced continuing concern about mother's mental health and substance abuse. While mother participated in some counseling while she

lived in Alexandria, the circuit court noted she had not followed through with her therapist's recommendations to seek psychiatric services and substance abuse services after she moved to Fairfax County. The court found that some of mother's testimony, especially about her drug use, had been "inconsistent" with earlier statements and documents, which "raised a lot of concern for the [c]ourt." Because mother's parental rights had been involuntarily terminated for siblings of the twins, the statutory scheme did not require the Department to even make "reasonable efforts" to reunite the twins with mother. Code § 16.1-283.

Considering the totality of the evidence, the circuit court did not err in finding that it was in the twins' best interests to terminate mother's parental rights under Code § 16.1-283(E)(i).

CONCLUSION

For all these reasons, the circuit court's ruling is affirmed.

*Affirmed*.

Annunziata, S.J., concurring.

I write separately in concurrence with the panel's determination that the court did not err in granting the petition to terminate mother's parental rights, but I do not join in the majority's analysis because the majority does not address my interpretation of the assignment of error mother raised.

Mother's assignment of error is formulated in her question:

> The circuit court erred in denying Mother's motion to continue or stay the proceedings when the circuit court did not retain jurisdiction—pursuant to Virginia Code § 16.1-242.1—to hear petitions to terminate parental rights while Mother had cases on appeal to this Court involving the same children in foster care.

The assignment of error sets the "analytical boundaries" for the arguments on appeal. *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017). Here, appellant asks in a matter of first impression whether the jurisdiction of the JDR/circuit court to adjudicate the petition for termination of her parental rights is retained pursuant to Code § 16.1-242.1, the statute the legislature enacted in 1998 to address an appeal from the JDR/circuit court and its effect on the lower court's jurisdiction.

This matter came to the circuit court as a *de novo* appeal from the JDR court; therefore, "the circuit court's jurisdiction was derivative of and thus dependent upon the [subject matter] jurisdiction of the JDR court." *Knight v. Ottrix*, 69 Va. App. 519, 526 (2018); *see* Code § 16.1-296(I) ("In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court.").

"Subject matter jurisdiction 'can only be acquired by virtue of the Constitution or of some statute.'" *Riddick v. Commonwealth*, 72 Va. App. 132, 141 (2020) (quoting *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49

(2018)); *see also Fredericksburg Dep't of Soc. Servs. v. Brown*, 33 Va. App. 313, 319 (2000) (explaining that "[t]he term 'subject matter jurisdiction' refers to the power granted to the courts by constitution or statute to hear specified classes of cases" (quoting *Moore v. Commonwealth*, 259 Va. 405, 409 (2000))).

The question of the JDR court's jurisdiction in the context of an appeal is specifically addressed by Code § 16.1-242.1 which provides that "[u]pon appeal to the circuit court of any case involving a child placed in foster care and in any appeal to the Court of Appeals or Supreme Court of Virginia, the juvenile court shall retain jurisdiction to continue to hear petitions filed pursuant to §§ 16.1-282 and 16.1-282.1."[22]  Pursuant to Code § 16.1-282, the JDR court is authorized to follow the procedures for foster care review, including the timing of the permanency planning hearing, and under subsection E, it is authorized to enter an order terminating residual parental rights pursuant to Code § 16.1-283 to achieve a permanent goal for the child.

"A primary rule of statutory construction is that courts must look first to the language of the statute.  If a statute is clear and unambiguous, a court will give the statute its plain meaning." *Moreno v. Moreno*, 24 Va. App. 190, 197 (1997) (quoting *Loudoun Cnty. Dep't of Soc. Servs. v. Etzold*, 245 Va. 80, 85 (1993)); *see also Akers v. Commonwealth*, 298 Va. 448, 453 (2020).  "As we do not believe the General Assembly intended to enact irreconcilable provisions in the Act, we construe the provisions in a way that gives full effect to all the statutory language." *Moreno*, 24 Va. App. at 197 (quoting *Marchand v. Div. of Crime Victims' Comp.*, 230 Va. 460, 463 (1986)).  Thus, "statutes which relate to the same subject matter should be read, construed and

---

[22] Code § 16.1-242.1 also provides that "[o]rders of the juvenile court in such cases shall continue to be reviewed and enforced by the juvenile court until the circuit court, Court of Appeals or Supreme Court rules otherwise."  In this matter, no court had ruled otherwise; therefore, the circuit court had continuing jurisdiction to hear the Department's petitions.

applied together so that the legislature's intention can be gathered from the whole of the enactments." *Id.* at 197-98 (quoting *Alger v. Commonwealth*, 19 Va. App. 252, 256 (1994)). "In interpreting statutes according to their ordinary meaning, this Court considers them *in pari materia*, meaning this Court will not examine statutes 'as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement.'" *Cox v. Commonwealth*, 73 Va. App. 339, 344 (2021) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)); *see also Moreno*, 24 Va. App. at 198.

Consequently, when analyzing the scope of the authorization of continuing jurisdiction granted by Code § 16.1-242.1, we look at the terms of Code § 16.1-282, a statute that Code § 16.1-242.1 references. Pursuant to Code § 16.1-282, the JDR court is authorized to enter an order for the termination of parental rights under Code § 16.1-283 to achieve a permanent goal for the child. Thus, under the operation of Code § 16.1-242.1, the JDR/circuit court retained jurisdiction to hear a petition to terminate parental rights while mother's appeal of the adjudicatory and dispositional orders was pending in this Court.