# IN THE COURT OF APPEALS OF VIRGINIA

Tuesday the 21st day of April, 2026.

Karen Taylor Kusterer, Appellant,

against

Commonwealth of Virginia, Appellee.

**Record No. 0347-25-4**

Upon a Petition for Rehearing En Banc
Circuit Court No. CM23001122

Before Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, Frucci, Bernhard and Duffan

On April 6, 2026, the appellant, by counsel, filed a petition requesting that the Court set aside the judgment rendered on March 24, 2026, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

Teste: A. John Vollino, Clerk

Entered: *Will Carli*
Deputy Clerk

Present:    Judges O'Brien, Chaney and Callins
Argued by videoconference


KAREN TAYLOR KUSTERER

                                                    OPINION BY
v.        Record No. 0347-25-4                  JUDGE DOMINIQUE A. CALLINS
                                                    MARCH 24, 2026
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

Christopher Leibig (Meghan Shapiro; Law Offices of Christopher
Leibig; Law Office of Meghan Shapiro, on briefs), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Karen Taylor Kusterer appeals the circuit court's judgment dismissing her appeal from

the general district court (GDC), holding that she waived her appeal rights under the terms and

conditions of her deferred disposition agreement.  Kusterer argues that she could not have

waived her appeal rights unless she complied with the terms and conditions of the agreement and

that, in any event, she did not waive her right to appeal the finding of the GDC that she did not

comply with the terms and conditions of the agreement.  Finding no error, we affirm the circuit

court's judgment.

BACKGROUND

Following her arrest for misdemeanor assault and battery, Kusterer entered into a written

plea agreement with the Commonwealth for a deferred disposition under Code § 19.2-298.02.

Kusterer agreed to plead no contest and to fulfill certain conditions.  In exchange, the

_____

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Commonwealth agreed to dismiss the case and to not prosecute Kusterer further for the offense. By signing the plea agreement, Kusterer explicitly acknowledged that (1) "when charged with a crime, the Constitution guarantees [her] . . . the right to appellate review of the decision of [the court] in the event" of conviction; (2) she "knowingly, intelligently and voluntarily waive[d]" this right; and (3) she would be "found guilty in accordance with [her no contest] plea" if she "fail[ed] to comply with [the agreement's] terms and conditions." Kusterer, her counsel, and the Commonwealth signed the agreement. The GDC accepted the agreement, and a judge signed it, confirming that the court had "advised [Kusterer] that th[e] agreement involves a waiver of . . . her right to appeal."

Nearly six months later, the Commonwealth moved to enter the assault and battery conviction based on Kusterer's failure to comply with the agreement's terms and conditions. The GDC found that Kusterer did not comply with the terms and conditions of the agreement, convicted her of assault and battery, and sentenced her to 60 days in jail, all suspended.

Kusterer appealed to the circuit court. The Commonwealth moved to dismiss the appeal, arguing that Kusterer had waived her right to appellate review, both expressly through the terms and conditions of the agreement and by entering a disposition under Code § 19.2-298.02. After a hearing on the motion, the circuit court found that Kusterer expressly waived her appeal rights and dismissed the de novo appeal.[2] This appeal followed.

---

[2] The circuit court entered the final order on September 15, 2023. Kusterer moved the circuit court to reconsider its decision, but the circuit court did not rule on her motion until November 6, 2023. Kusterer initially appealed from this November 6 order, noting her appeal on November 8. But as the circuit court lost jurisdiction over the matter on October 6, 2023, this Court dismissed her appeal as untimely. We later granted Kusterer a delayed appeal under Code § 19.2-321.1(A).

ANALYSIS

Kusterer argues that the circuit court erred in dismissing her appeal. She contends that her plea agreement was ambiguous as to the nature of the appeal rights waived, and therefore we cannot construe it as waiving her appeal from GDC to the circuit court. She further asserts that the putative appeal waiver cannot extend to the GDC's finding that she failed to comply with the deferral agreement. We disagree.

Kusterer's appeal raises questions of contract interpretation. Because plea agreements "are generally governed by the law of contracts," we review the circuit court's interpretation thereof de novo. *Hood v. Commonwealth*, 269 Va. 176, 181 (2005). But we defer to the circuit court's factual findings, to the extent implicated, unless plainly wrong or without evidentiary support. *Id.*

"With few exceptions, most legal rights—whether common law, statutory, or constitutional—can be waived if the requisite formalities are observed." *Congdon v. Commonwealth*, 57 Va. App. 692, 695 (2011). A party may "waive by contract any right conferred by law or contract" if they have "knowledge of the right and intended to waive it." *Burke v. Burke*, 52 Va. App. 183, 188 (2008) (quoting *Gordonsville Energy, L.P. v. Va. Elec. & Power Co.*, 257 Va. 344, 356 (1999)). In the criminal context, a defendant waives appeal rights where "his decision to waive his appeal was made knowingly, voluntarily, and intelligently." *Congdon*, 57 Va. App. at 699 (quoting *Davidson v. Commonwealth*, 244 Va. 129, 132 (1992)). An express waiver of appeal rights may be "made through a writing, an oral statement, or a combination of both." *Griffin v. Commonwealth*, 65 Va. App. 714, 719 (2016). We construe written appeal waivers by ascertaining the drafters' intent as reflected in the plain language of the instrument. *See Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023). In doing so, we assign words their ordinary meaning, rather than "any curious, narrow, or strained construction."

*Osman v. Commonwealth*, 76 Va. App. 613, 642 (2023) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)).

Here, Kusterer's arguments are at odds with the plain language of her plea agreement. Her contention that the GDC cannot issue "unappealable" orders—suggesting that GDC appeal rights are unwaivable—is baseless. Appeal rights from GDC are "entirely statutory." *See Condgon*, 57 Va. App. at 695-96 (characterizing appeal rights as statutory for felony proceedings against a juvenile in juvenile and domestic relations district court); *compare Knight v. Ottrix*, 69 Va. App. 519, 524 (2018) (discussing the origins of juvenile and domestic relations district courts), *with Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016) (discussing the origins of general district courts). We recognize that since, in this context, "most courts 'are persuaded that because other important constitutional rights of [a] defendant may be waived by plea agreement, the right to appeal, which is not even guaranteed by the Constitution, but by statute, should also be subject to waiver.'" *Congdon*, 57 Va. App. at 696 (quoting 7 Wayne R. LaFave, *Criminal Procedure* § 27.5(c), at 75-76 (3d ed. 2007)). Thus, "Virginia has long held a criminal defendant can waive 'his appeal of right' if the circumstances demonstrate 'his decision to waive his appeal was made knowingly, voluntarily, and intelligently.'" *Id.* at 699 (quoting *Davidson*, 244 Va. at 132). We find the dissent's attempt to distinguish *Congdon*, *Parrish*, and *Ottrix* wholly unpersuasive.

The plain language of Kusterer's plea agreement reflects an express waiver of her appeal rights. By signing, Kusterer agreed that (1) "when charged with a crime, the Constitution guarantees [her] . . . the right to appellate review of the decision of [the court] in the event" of conviction; (2) she "knowingly, intelligently and voluntarily waive[d]" this right; and (3) she would be "found guilty in accordance with [her no contest] plea" if she "fail[ed] to comply with [the agreement's] terms and conditions." This language cannot be "understood in more than one

way" and is not "difficult to comprehend, . . . of doubtful import, or lack[ing] clearness." *Taylor v. Commonwealth*, 298 Va. 336, 342 (2020) (defining ambiguous). Nor does its application lead to internal inconsistencies or render the agreement incapable of operation. *Osman*, 76 Va. App. at 643 (defining absurdity). Indeed, contrary to Kusterer's contention, the agreement unambiguously and expressly waives her right to appeal the decision of the GDC, without limitation, in exchange for the deferral of proceedings as contemplated by Code § 19.2-298.02.[3] She waived appellate review of the GDC's decision if she was convicted, and she could *only* be convicted if the GDC found her in violation of the agreement's terms and conditions. Interpreting the agreement as Kusterer suggests—implicitly providing for appellate review of the GDC's violation finding—is at odds with the agreement's plain language and neuters the appeal waiver. Kusterer understood the breadth of the waiver, particularly since the GDC judge signed the agreement, confirming that they "advised [Kusterer] that th[e] agreement involves a waiver of . . . her right to appeal."

We assume nothing about the proper interpretation of Code § 19.2-298.02(C) or the Virginia Constitution. Although the parties dispute the proper interpretation of Code § 19.2-298.02, as a matter of judicial restraint, we do not consider the parties' statutory arguments. Our jurisprudence has long preferred a ruling specific to the facts of a particular case, since it "will affect far fewer subsequent cases than a broad pronouncement on an open legal question." *Butcher v. Commonwealth*, 298 Va. 392, 397 (2020). Judicial restraint is not an inconvenient interpretative lens, but rather an *obligation* imposed upon appellate courts arising out of the very fabric of our judicial system. *See Theologis v. Weiler*, 76 Va. App. 596, 603

---

[3] Our dissenting colleague makes much of the agreement form, referring to it as "boilerplate." Given that courts and practitioners alike routinely rely on standard forms and "boilerplate" legal instruments, we find that such characterization is inconsequential to the question of the agreement's enforceability.

(2023) ("We have an 'obligation to decide cases on the best and narrowest grounds available.'" (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)). We therefore exercise this "degree of judicial caution" and thus decline to reach "out beyond the limits of [this] particular case to address unnecessary and novel issues." *Butcher*, 298 Va. at 397.

CONCLUSION

Accordingly, we affirm the circuit court's judgment dismissing Kusterer's appeal.

*Affirmed*.

Chaney, J., dissenting.

The Court today affirms the dismissal of a de novo appeal from a court not of record by treating a standard "Misdemeanor Diversion Agreement (19.2-298.02)" form as an unqualified waiver of all appellate review from the general district court. That unqualified waiver includes review of a later contested violation finding and resulting conviction. It does so based solely on contract principles and deliberately declines to interpret Code § 19.2-298.02(C) or consider the structural limits imposed by Article I, § 8 of the Constitution of Virginia and Code § 16.1-132 on courts not of record.

This case presents three distinct but interrelated questions: (1) the proper construction of Code § 19.2-298.02(C)'s conditional waiver language; (2) whether general district courts possess constitutional authority under Article I, § 8 to enter unappealable orders following contested violation proceedings; and (3) whether the form deferral agreement, even if broadly worded, can expand statutory and constitutional limitations on appellate waivers. The majority's contract-first approach bypasses these foundational jurisdictional questions and permits a court not of record to extinguish appellate rights through a boilerplate form, a result neither the statute nor the Constitution authorizes. Code § 19.2-298.02(C) is the statutory basis for the entire deferral proceeding, and the form agreement expressly incorporates it by name. Under settled Virginia precedent, "the law in force on the date a contract is formed determines the rights of its parties," and the statute is "part of the contract as though incorporated therein." *Wright v. Commonwealth*, 275 Va. 77, 79-80 (2008).

The question before us is not merely what this form contract states, but what authority the General Assembly has granted district courts to extinguish appellate review. Statutory interpretation of Code § 19.2-298.02(C), therefore, forms part of the best and narrowest ground for decision rather than an issue that may be presumed and disregarded.

- 7 -

Accordingly, I respectfully dissent.

I. Code § 19.2-298.02(C) creates a limited waiver conditioned on fulfillment of deferral terms.

The primary issue, as raised by the parties below and addressed by the circuit court, is the proper interpretation of Code § 19.2-298.02(C). Subsection C of Code § 19.2-298.02 provides:

> By consenting to and receiving a deferral of proceedings or a deferral of entry of a final order of guilt and fulfilling the conditions as specified by the court as provided by subsection A, the defendant waives his right to appeal such entry of a final order of guilt.
>
> Prior to granting a deferral of proceedings, a deferral of entry of a conviction order, if none, or a deferral of a final order, the court shall notify the defendant that he would be waiving his rights to appeal any final order of guilt if such deferral is granted.

The first sentence defines when the substantive waiver arises and the conditions upon which it is predicated. The subject is "the defendant," the verbs are "consenting" and "receiving," the objects are two alternative types of deferrals—"a deferral of proceedings or a deferral of entry of a final order of guilt"—and the sentence adds a conjunctive clause: "and fulfilling the conditions as specified by the court as provided by subsection A." Only when all these elements are present does the defendant "waive[] his right to appeal such entry of a final order of guilt."

The second sentence imposes a procedural advisement obligation on the court before it can grant a deferral under Code § 19.2-298.02. The court shall notify the defendant that, if the statutory predicate for waiver later arises, "he would be waiving his rights to appeal any final order of guilt if such deferral is granted." That warning ensures defendants understand the potential consequences of successfully completing or accepting a deferral that may lead to a negotiated conviction. That advisement is prospective and conditional ("would be waiving" and "if such deferral is granted"); it does not redefine the waiver's terms or expand the waiver beyond the circumstances specified in the first sentence. Nor does the advisement create a

- 8 -

separate substantive waiver provision. Where a statute specifies the precise conditions under which a right is waived, courts may not enforce broader waivers detached from those conditions. *See, e.g.*, *Harris v. Commonwealth*, 85 Va. App. 497, 509 (2025) ("Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." (quoting *Berry v. Barnes*, 72 Va. App. 281, 293 (2020))).

Read harmoniously, the two sentences work together:

• First sentence: defines a limited, conditions-fulfilled substantive waiver of appeal and when the waiver occurs (upon fulfillment);

• Second sentence: mandates an upfront advisement requirement of the limited consequence whenever a deferral is granted.

*See Corzine v. Alexandria City Council*, 86 Va. App. 623, 638 (2026) ("Under well-established principles of construction, courts should 'interpret the several parts of a statute as a consistent and harmonious whole . . . to effectuate the legislative goal.'" (alteration in original) (quoting *Bd. of Supervisors v. Cohn*, 296 Va. 465, 473 (2018))). Interpreting the advisement sentence as extending or creating a separate substantive waiver to include all deferral outcomes, regardless of compliance, reverses the roles of the two sentences and renders the specific limitation in the first sentence of Code § 19.2-298.02(C) meaningless.

Appellant correctly interprets the first sentence as creating a limited, conditions-fulfilled waiver. When a defendant avails himself or herself of a Code § 19.2-298.02 deferral, successfully completes the conditions as specified by the court under subsection A, and thereby earns a bargained-for final disposition, such as a conviction of a lesser offense or an agreed-upon sentence, the defendant cannot then appeal "such entry of a final order of guilt." Op. Br. 14-18. This statutory interpretation not only gives every word operative effect but also reflects how Code § 19.2-298.02 is used in practice. As appellant's counsel explained at oral argument, such

- 9 -

deferrals "routinely" end in convictions—often reduced convictions or convictions with agreed sentencing caps—after successful completion. Oral Argument at 4:16-8:09, *Kusterer v. Commonwealth*, No. 0347-25-4.

The Commonwealth and seemingly the majority, however, treat subsection C as a blanket waiver because it refers broadly to "any final order of guilt" and reason that any defendant who "consent[s] to and receiv[es] a deferral" under Code § 19.2-298.02(C) forfeits his right to appeal any final order of guilt that follows, whether or not he fulfills the conditions. A'ee Br. 13-17; J.A. 108-110. Under that reading, the fulfillment clause has no operative effect and is functionally disregarded. I cannot agree, as courts may not treat enacted language as surplus merely to simplify its analysis.

Here, Code § 19.2-298.02(C) does not apply, as appellant did not "fulfill[] the conditions," as both the general district court's "did not comply" notation and the circuit court's order make plain. J.A. 3, 176-77. The statutory predicate for waiver never arose.

A. The surplusage and expressio unius canons support the limited-waiver interpretation.

We do not interpret statutes in a way that renders language meaningless. This Court "disfavor[s] a construction of statutes that renders any part or the statute useless or superfluous." *Shoemaker v. Funkhouser*, 299 Va. 471, 487 (2021); *see also Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 275 (4th Cir. 2025) ("If possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012))). The Commonwealth's blanket-waiver reading violates the surplusage canon. If a waiver arises whenever a defendant receives a deferral, regardless of performance, then the

phrase "and fulfilling the conditions as specified by the court as provided by subsection A" has "no consequence."

At oral argument, a member of the panel proposed a grammatical construction that would treat "and fulfilling the conditions as specified by the court" as conjunctive only with "a deferral of entry of a final order of guilt," leaving "a deferral of proceedings" as an independent route to waiver. Oral Argument at 8:09-10:22, *Kusterer v. Commonwealth*, No. 0347-25-4. In response, appellant's counsel noted the sentence's structure—a single subject and verb phrase followed by alternative objects and a single conjunctive clause—does not support such a bifurcation. Oral Argument at 9:06-11:20, *Kusterer v. Commonwealth*, No. 0347-25-4. If the General Assembly had intended to link fulfillment only to the second form of deferral, it could simply have written: "by consenting to and receiving a deferral of proceedings, or by receiving a deferral of entry of a final order of guilt and fulfilling the conditions. . . ." However, it did not.

The expressio unius canon also supports the limited-waiver interpretation. When the General Assembly uses different language to address similar subjects in related statutes, we presume that it meant something by the difference. *See, e.g.*, *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *Rives v. Commonwealth*, 284 Va. 1, 3 (2012); *Brown v. Commonwealth*, 284 Va. 538, 545 (2012); *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004). The expressio unius canon provides that mention of a specific item in a statute implies that omitted items were not intended to be included within the scope of the statute. In Code § 19.2-298.02(C), the General Assembly, by explicitly requiring a waiver of appeal rights only upon fulfillment of conditions, implicitly excludes waiver when those conditions are not met.

The General Assembly has adopted different approaches to appeals from convictions following unfulfilled deferral agreements under various statutes. As appellant's briefs detail,

- 11 -

Code § 18.2-57.3(F) (domestic assault deferral) uses broad "adjudication" language and contains an express appeal waiver; Code § 18.2-251 (drug deferral) includes no waiver; and Code § 19.2-298.02(C) adopts a middle ground, tying waiver to "fulfilling the conditions" and to "such entry of a final order of guilt." Op. Br. 14-16; Reply Br. 2-3. The Commonwealth's reading effectively transforms Code § 19.2-298.02(C) into Code § 18.2-57.3(F), which uses the broader term "adjudication" to encompass all proceedings following deferral. When the General Assembly intends a comprehensive appellate waiver, it knows how to draft one. Its choice to condition the waiver in Code § 19.2-298.02(C) on "fulfilling the conditions" while omitting such language from Code § 18.2-57.3(F) and including no waiver in Code § 18.2-251 underscores a deliberate variation in approach. That variation is particularly significant given that all three statutes were before the General Assembly when it enacted and amended these provisions. Yet each uses materially different language regarding appellate consequences.

This material variation in terms between similar statutes suggests a variation in meaning, as recognized by the Supreme Court of Virginia, "when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001); *see also Corzine*, 86 Va. App. at 634 ("The difference in language between the related statutes is quite telling. [Section] 2.2-3003(e) demonstrates that when the General Assembly intends to create a full-fledged discovery mechanism, it knows how to do so." (alteration in original) (quoting *City of Hampton v. Williamson*, 302 Va. 325, 335 (2023))). In Code § 19.2-298.02(C), by expressly conditioning waiver on fulfilled conditions while remaining silent as to non-fulfillment, the legislature indicated that waiver does not extend to non-compliance cases. An interpretation that eliminates that distinction functionally rewrites Code § 19.2-298.02(C) into a broad waiver that the General Assembly did not enact.

B. Remedial-statute and lenity principles favor the narrower reading.

Appellant also correctly characterizes Code § 19.2-298.02 as remedial. Op. Br. 21-22.
The General Assembly enacted the statute to give courts a flexible tool to craft individualized, rehabilitative outcomes—deferrals, dismissals, and reduced convictions—in appropriate cases. *Cf., e.g.*, *Alston v. Commonwealth*, 49 Va. App. 115, 124 (2006) ("*[P]robation statutes* are highly remedial and should be liberally construed to provide trial courts a valuable tool for rehabilitation of criminals." (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982))). We have long held that remedial statutes "must be 'liberally construed in favor of the [party]'" they are designed to aid. *Walker v. Va. Dep't of Corr.*, 79 Va. App. 415, 421 (2024) (quoting *E.I. du Pont de Nemours & Co. v. Eggleston*, 264 Va. 13, 17 (2002)); *Wright v. Commonwealth*, 32 Va. App. 148, 151 (2000) (quoting *Deal v. Commonwealth*, 15 Va. App. 157, 161 (1992)). Therefore, it is difficult to reconcile that principle with a reading of Code § 19.2-298.02(C) that converts every use of this remedial scheme into a forfeiture of de novo appellate rights in a non-record court—even regarding contested violation findings.

Even if Code § 19.2-298.02(C) is susceptible to more than one interpretation, appellant correctly invoked the principle of lenity to urge the narrower reading.

II. Article I, § 8 and the structure of non-record courts constrain appeal waiver.

Even apart from statutory text, our constitutional and jurisdictional framework for courts not of record counsels against the broad appeal waiver the majority enforces.

Article I, § 8 of the Constitution of Virginia permits misdemeanor trials in courts not of record only while "preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction." That is a structural condition, not a mere suggestion. As this Court noted in *Canales v. Orellano*, 67 Va. App. 759, 776 n.10 (2017) (en

- 13 -

banc), when the framers of the Constitution or legislature "separat[e] and limit[] the power and authority of government, they really mean it[.]"

General district courts are "creations of the General Assembly" and "courts of limited jurisdiction," able to exercise only such subject-matter jurisdiction "as has been expressly conferred by statute." *Parrish v. Fannie Mae*,[4] 292 Va. 44, 49 (2016) (citing *Addison v. Salyer*, 185 Va. 644, 648 (1946)).[5] Code § 16.1-132 implements Article I, § 8 by guaranteeing de novo appeal from district court convictions and certain other final orders, "whether or not such conviction was upon a plea of guilty." *See also Jacks v. Commonwealth*, 74 Va. App. 783, 795

---

[4] The doctrinal distinctions between courts of record and courts not of record matter here. "The judicial power of the Commonwealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish." Va. Const. art. VI, § 1. Circuit courts are such courts of record; they possess original criminal jurisdiction and hear appeals de novo from courts not of record. *See* Code § 17.1-513 (granting circuit courts original jurisdiction over felony and misdemeanor indictments and appellate jurisdiction "in all cases, civil and criminal," from "any inferior tribunal"); Code §§ 16.1-132, -136 (guaranteeing a right to de novo appeal from district court convictions and a jury trial in circuit court "as if [the accused] had been indicted"). District courts, by contrast, are creations of statute and "courts of limited jurisdiction," exercising only such subject-matter jurisdiction "as has been expressly conferred by statute." *Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016) (citing *Addison v. Salyer*, 185 Va. 644, 648 (1946)). *Parrish* and *Addison* involved civil appeals and derivative appellate jurisdiction; they do not displace the constitutional requirement in Article I, § 8 that misdemeanor trials in courts not of record may occur only while preserving a right to appeal to a court of record with original criminal jurisdiction.

[5] The majority seizes upon language from *Congdon v. Commonwealth*, 57 Va. App. 692 (2011), *Parrish*, 292 Va. 44, and *Knight v. Ottrix*, 69 Va. App. 519 (2018), to support its characterization of the appeal rights at issue here as "entirely statutory." Majority at 4. Its treatment of those cases is distinguishable. *Congdon* involved an explicit waiver of a purely statutory right to appeal a juvenile proceeding under a specific juvenile-appeal statute; it did not address the structural guarantee in Article I, § 8 that misdemeanor trials in courts not of record may occur only while "preserving" a right to appeal to a court of record with original criminal jurisdiction. *See Congdon*, 57 Va. App. at 695-96. *Parrish* and *Addison* likewise concerned civil matters and the circuit court's derivative appellate jurisdiction in de novo civil appeals from courts not of record. *See Parrish*, 292 Va. at 47-49 (unlawful detainer action); *Addison*, 185 Va. at 646-48 (attachment proceeding). They do not control this case, which involves a criminal conviction following a contested violation proceeding and a constitutionally grounded de novo appeal right under Code § 16.1-132.

(2022) ("An appeal to a circuit court (a court of record) from a general district court (not a court of record) is considered *de novo*.").

Appellant argues that only a specific, narrowly drawn statute—such as Code § 18.2-57.3(F)—can allow a district court to enter unappealable criminal orders and then only within the terms set by the General Assembly. Op. Br. 8-14; Reply Br. 1-2. Section 19.2-298.02(C), properly construed, authorizes waiver only for cases with fulfilled-conditions. It does not license unappealable contested violation rulings in non-completion cases.

If the Commonwealth's reading of Code § 19.2-298.02(C) were accepted, any defendant who signs the district court's standard "Misdemeanor Diversion Agreement (19.2-298.02)" form would:

> • Submit to a deferred disposition even where the court has made no initial finding of "facts sufficient" for guilt to support a conviction;
>
> • Face a subsequent violation hearing at which new alleged conduct is *adjudicated*;
>
> • Be subject, upon a finding of violation, to conviction on the original charge and sentencing up to the full statutory maximum; and
>
> • Be denied the right to a de novo appeal to the circuit court from that final judgment.

Appellant's counsel succinctly captured the constitutional concern:

> [Y]ou cannot have a contested hearing in a general district court
> and not be able to appeal that to the circuit court and then on
> beyond. You can have an agreed disposition in which . . . you
> waive your right to appeal in a known scope, but here there isn't --
> it isn't -- the scope is not expressed.

J.A. 146.

The majority's form agreement-only holding provides an incomplete analysis without addressing whether Code § 19.2-298.02(C) authorizes such a waiver or whether Article I, § 8 and Code § 16.1-132 permit such a regime. The constitutional command is unequivocal: laws may provide for misdemeanor trials in courts not of record only if they "preserve[] the right of the

- 15 -

accused to an appeal" and obtain a jury trial in a court of record with "original criminal jurisdiction." Va. Const. art. I, § 8. Preserving that right is incompatible with extinguishing it through a standard form that defendants must sign to access a remedial statute. Any statutory waiver mechanism must therefore be construed narrowly to avoid undermining that constitutional condition.

Even if we assume that a defendant may waive their de novo appeal rights, any such waiver must be narrowly construed, clearly expressed, and must rely on statutory authority. Section 19.2-298.02(C) provides limited authority; a boilerplate district court diversion form cannot expand a waiver to encompass all future violation proceedings.

III. Under contract law principles, the deferral agreement does not waive the right to de novo review of the violation determination.

Even if Code § 19.2-298.02(C), Article I, § 8, and Code § 16.1-132 could be set aside, and this case could be decided on the deferral agreement alone, appellant did not clearly, voluntarily, knowingly, and intelligently waive de novo review of the later violation finding and resulting conviction.

A. The waiver language in the deferral agreement is at least ambiguous as to appeals of non-compliance violations.

The "Misdemeanor Diversion Agreement (19.2-298.02)" form states that, when charged, appellant has "the right to appellate review of the decision of this Court in the event I am convicted" and that "by entering into this agreement I knowingly, intelligently and voluntarily waive all of the rights enumerated above." J.A. 17. These assertions appear alongside a list of standard trial rights, specifically the right to a speedy and public trial, right to counsel, right to a jury, confrontation, compulsory process, proof beyond a reasonable doubt, and the right to remain silent. J.A. 17.

Failing to distinguish between a finding of violation and a finding of guilt is legal error. A violation-of-conditions finding in a deferral statute context is analogous to a hearing on revocation of suspended sentences in general. In the latter, the judicial finding of a violation is an appealable order, regardless of whether the defendant ever waived their right to appeal the underlying conviction. Violation hearings under Code § 19.2-298.02 are distinct proceedings that occur later in time, focus on alleged non-compliance of deferral terms, and often involve alleged new conduct. A violation determination is an adjudication of disputed facts, not a ministerial act implementing a prior judgment.

Here, the July 21, 2023 general district court hearing addressed whether appellant violated a no-contact condition by contacting her neighbor, not whether she had committed the underlying June 2022 assault that was the subject of the deferral agreement.[6] J.A. 3, 19-25, 103-05. The circuit court correctly acknowledged that it was a "contested hearing on the violation." J.A. 222-24.

As appellant argues, this distinction between a violation hearing and a merits trial is critical. The "Misdemeanor Diversion Agreement (19.2-298.02)" form waiver in paragraph 5— especially the reference to "a jury of seven persons"—does not naturally encompass later violation hearings, which are not jury trials at all. J.A. 123-29. Appellant stressed that the appeal waiver is not a "future p[ro]spective waiver about conduct you yourself have never committed," characterizing such a waiver as an "unprecedented change in Virginia criminal procedure[.]" J.A. 118-19.

This distinction is not semantic. The deferral agreement's paragraph 5 lists the trial rights waived—speedy and public trial, right to counsel, jury trial of "seven persons," confrontation,

---

[6] This hearing occurred more than seven months after Kusterer entered the deferral agreement in December 2022. Moreover, the hearing addressed allegations that occurred in March and April 2023—months after the agreement was entered.

compulsory process, proof beyond a reasonable doubt, and the right to remain silent.  J.A. 17.

These are rights applicable to trial on the *original* charge.  A violation proceeding under Code

§ 19.2-298.02(B)—occurring months later, addressing alleged non-compliance with conditions,

and potentially involving entirely different conduct—is procedurally and substantively distinct.

The reference to a "jury of seven persons" particularly demonstrates the waiver contemplated

trial rights in the original proceeding, not future administrative-style violation hearings, which

involve no jury at all.

A standard violation proceeding more closely resembles a probation revocation

proceeding than a criminal trial.  It addresses compliance with court-imposed conditions, often

involves alleged conduct that would not independently constitute the charged offense, and

focuses on whether specific conditions were violated rather than whether the original crime

occurred.  Treating a waiver of trial rights on the original charge as simultaneously waiving de

novo review of this separate adjudicatory proceeding impermissibly expands the waiver beyond

what a reasonable defendant would understand.

Against that backdrop, the waiver in the standard deferral agreement form should be

interpreted as waiving:

> • The right to a trial and de novo appeal on the original underlying charge at the time of
> the deferral; and

> • The right to appeal from a bargained-for final disposition after successful completion of
> the deferral.

The form, however, does not waive the de novo review of a subsequent, separate violation

adjudication involving new facts and alleged future misconduct.  Assuming, arguendo, that there

is ambiguity regarding the waiver, such ambiguity must be resolved in favor of the defendant.

- 18 -

B. The deferral agreement incorporates Code § 19.2-298.02 and must be interpreted in conjunction with it.

The diversion form is not freestanding; it is explicitly a "Misdemeanor Diversion Agreement (19.2-298.02)." J.A. 17. The Commonwealth's motion to impose conviction was titled "Motion to Impose Conviction for Failure to Comply with 19.2-298.02." J.A. 19-21. The general district court's warrant form reflects that the court checked the box labeled "Deferred pursuant to 19.2-298.02" and expressly incorporated the diversion agreement by reference into its order. J.A. 3, 135-38.

Under *Wright*, Code § 19.2-298.02 is "part of the contract as if incorporated therein." 275 Va. at 81 (quoting *Paul v. Paul*, 214 Va. 651, 653 (1974)). "[B]asic rules of contract law apply to plea agreements," however, "'the law in force on the date a contract is formed determines the rights of its parties.'" *Id.* at 80 (quoting *Wright v. Commonwealth*, 49 Va. App. 58, 62 (2006)). This means the appeal waiver set forth in Code § 19.2-298.02(C), which is expressly limited to cases in which the defendant fulfills the agreed conditions, is part of the bargained-for agreement between the defendant and the Commonwealth. Contract law principles require us to interpret the agreement's general waiver language in harmony with its specific statutory language, ensuring that the two are not contradictory. The specific provisions take precedence over the general. *See, e.g.*, *Nimety v. Commonwealth*, 66 Va. App. 432, 437 (2016) ("[T]he more specific enactment prevails over the more general[.]" (quoting *Eastlack v. Commonwealth*, 282 Va. 120, 126 (2011))). The majority's contrary methodology treats the deferral agreement as freestanding and then labels its contract-only reading an exercise in judicial restraint. But once Code § 19.2-298.02 is acknowledged as part of the contract "as if incorporated therein," *Wright*, 275 Va. at 80-81, the truly narrow ground necessarily includes interpreting the statute's conditional waiver language. Courts may not enforce a boilerplate

district-court form in a manner that expands appeal waivers beyond the circumstances the General Assembly specified.

Therefore, even if a defendant may contractually waive their right to appeal a district court diversion, such a contractual waiver should be interpreted strictly, in accordance with Code § 19.2-298.02(C). Under this interpretation, the waiver applies only when the defendant complies with the specified conditions and receives the agreed-upon disposition. It does not apply in cases of non-compliance like this one, nor does it implicitly eliminate the right to de novo review of violation findings.

Kusterer's deferral agreement contemplated a dismissal under subsection A(c), not a conviction. The agreement stated: "If I comply with these terms and conditions the Commonwealth will: move to dismiss the case enumerated above and agree not to prosecute me further for this offense." Because Kusterer negotiated for a dismissal, not a conviction, she did not knowingly waive her right to appeal a conviction that was never part of the bargained-for disposition.

C. Presumption against waiver of constitutional rights.

Our cases emphasize that waiver of constitutional rights cannot be presumed[7] and must be made voluntarily, knowingly, and intelligently. *Hunter v. Commonwealth*, 13 Va. App. 187,

---

[7] To the contrary, we have a presumption *against* the waiver of constitutional rights. *See, e.g.*, *Richardson v. Commonwealth*, 67 Va. App. 436, 441 (2017) ("On appeal, appellant contends that he never knowingly and voluntarily waived his right to a jury trial. The Commonwealth does not dispute this assertion; indeed, the Commonwealth concedes that 'there is a "presumption against [a] waiver of fundamental constitutional rights."'" (alteration in original)); *Blue v. Commonwealth*, 49 Va. App. 704, 711 (2007) ("While we view the evidence in the light most favorable to the Commonwealth, we must also 'indulge every reasonable presumption against waiver of counsel.'" (quoting *McNair v. Commonwealth*, 37 Va. App. 687, 698 (2002) (en banc))); *Cary v. Commonwealth*, 40 Va. App. 480, 486 (2003) ("At the trial level, '[a] heavy burden rests upon the Commonwealth to demonstrate that the accused has made a valid waiver [of his Fifth Amendment rights]. Courts must indulge every reasonable presumption against waiver.'" (first alteration in original) (quoting *Grogg v. Commonwealth*, 6 Va. App. 598, 611 (1988))).

191 (1991) (quoting *Sisk v. Commonwealth*, 3 Va. App. 459, 462 (1986)). The de novo appeal from a district court conviction, guaranteed by Article I, § 8, and codified in Code § 16.1-132, is a fundamental constitutional safeguard; it is not solely a statutory convenience. We therefore "indulge every reasonable presumption against waiver of fundamental constitutional rights." *White v. Commonwealth*, 214 Va. 559, 560 (1974) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

There is no transcript of the general district court's December 16, 2022 hearing. Therefore, the court only had the diversion agreement and the warrants. Under these circumstances, we cannot conclude that appellant had "sufficient awareness of the relevant circumstances and likely consequences" to waive de novo review of future violation determinations and resulting convictions, particularly where proceedings occur in a court not of record. *Hunter*, 13 Va. App. at 191 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

Any ambiguity regarding the scope of the waiver should be interpreted in favor of the appellant, rather than extending a district court's authority beyond established bounds. Similarly, the absence of a record confirming an informed waiver weighs against finding one.

Here, at the time Kusterer signed the deferral agreement in December 2022, she could not have understood that she was waiving her right to appeal a violation finding based on conduct that had not yet occurred (March-April 2023) and that would be adjudicated in a contested hearing months later.

Enforcing Kusterer's district court's deferred-agreement waiver would wrongly assume that she expressly waived her specific right to de novo review of the revocation judgment. The only waiver in the record was ambiguous and made earlier in a separate proceeding before a court not of record.

CONCLUSION

The question is not whether defendants *may* waive their constitutional right to de novo appeal—they may. The question is whether *this* defendant, under *these* circumstances, made a knowing, voluntary, and intelligent waiver that encompasses the general district court's contested factfinding at a violation proceeding. She did not.

By enforcing a waiver broader than the statute authorizes and broader than a reasonable defendant would understand from the form agreement, the majority permits courts not of record to expand their limited jurisdiction through boilerplate contract language. This approach inverts the constitutional and statutory framework. Instead of the General Assembly expressly conferring jurisdiction on district courts subject to the constitutional guarantee of appeal, boilerplate forms now confer unappealable jurisdiction on these limited courts.

Under the majority's decision, any person who signs a Code § 19.2-298.02 form deferral agreement surrenders constitutional appellate rights not only for a negotiated final disposition but also for any future contested violation proceeding, regardless of the procedural fairness of that proceeding, the strength of the evidence, or whether the alleged violation bears any relationship to the original charge. All of this occurs in a court not of record, with no transcript to review, and no meaningful appellate oversight. Code § 19.2-298.02, a remedial statute designed to aid defendants, should not operate as a trap for the unwary or a mechanism to divest circuit courts of their constitutional appellate function.

Under Code § 19.2-298.02(C), a defendant waives the right to appeal a final order of guilt only if the defendant (1) consents to and receives a deferral, (2) fulfills the conditions specified by the court, and (3) receives a final order of guilt as the bargained-for disposition. If the defendant does not fulfill the conditions and is convicted based on a violation finding, the defendant retains the constitutional and statutory right to de novo appeal of both the violation

- 22 -

finding and the resulting conviction. Because appellant did not "fulfill[] the conditions as specified by the court," the statutory waiver never arose, and she retains her constitutional and statutory rights to de novo appellate review of both the violation finding and the resulting conviction. For these reasons, I would reverse the circuit court's dismissal order and remand for proceedings consistent with Code § 19.2-298.02(C), Article I, § 8 of the Constitution of Virginia, and Code § 16.1-132.